Hemphill, Ch. J.
Several grounds have been urged by the counsel of the plaintiffs for a. reversal of the judgment, which may be resolved into two principal objections, viz : 1st. That the land is the separate property of the wife, and that a judgment against the husband and wife could not be enforced against this property so as to divest the wife of her title. 2d. That if the judgment were legal and binding as against the property of the defendants or either of them, yet all the subsequent proceedings were illegal, and the acts under them confer no title on tíre purchaser of the land, who'is defendant in the present suit.
One of the counsel of the defendant in error has, among other matters, insisted that no question as to the wife’s liability to respond in damages out of her separate property for the joint fraudulent representations of herself and husband in the sale of a portion of that property can now be raised. That this position is sound cannot be questioned. The judgment upon' -which the execution issued was rendered between the parties to this suit by a court of competent jurisdiction, and as between them and their privies is conclusive, unless fraudulently obtained. Whether this or any other defense in abatement or bar on the ground of coverture could have been successfully pleaded in that action is not now to be considered. They were not pleaded nor urged at the trial of the cause, nor was a reversal of the judgment sought on these or other reasons before an appellate tribunal, and they form no such grounds as will avoid the force of that judgment in a collateral action. The acts oí femes covert in pais may be and frequently are void; yet this does not impair the conclusive force of judgments to which they are parties; and if they be not reversed on error or appeal, their effects cannot be gainsaid when they are enforced by ultimate process, or where they are brought to bear on their rights in any future controversy.
One of the counsel for the defendant has contended that his title can be supported on the ground that the husband, having by statute the management of the separate property of the wife, is vested with such an interest in that property as can be the subject of sale under an execution issued against himself or against himself and wife. This view of the legal effect of the husband’s right to manage the separate property of the wife is,' we apprehend, entirely erroneous. The authorities to which he has referred maintain no such doctrine as applicable to the right of the husband in the separate equitable estate of the wife or its liability to execution on judgments recovered against himself. The doctrine was probably deduced from the rules by which at common law the husband was vested with a freehold interest in the lands of the wife, which he could voluntarily alienate, or which might be sold in satisfaction of his debts. (2 Kent, 131.) But the principles of the common law, especially when unmodified by equity, furnish no rule for the determination of the quantity or quality of the interest of the husband in tlie separate property of the wife as *150 fixed by law in this Slate. The common law knew nothing oí separate property in tlie wife. Its origin is attributable to equity, and its recognition was a great innovation on that “ immemorial policy” of the law, which merged, by force of tlie coverture, the separate existence, and capacities of the wife in the husband. The right of the wife to hold all her property in her separate right is recognized by the law of tlie State. Her goods and chattels am not vested by marriage in tlie husband, nor is lie entitled to a freehold estate in her reality; aiid all tnc rules of lawfonnded upon such title in her property are inoperative under a system by which such rights are wholly repudiated. He has by law the management of the estate of the wife, and the incidents essential to the due exercise of sneli authority, not for his own benefit, but for that of the community or of the estate which lie controls.
But although the husband has no such interest in the separate estate of tlie wife as could be disposed of under execution in satisfaction of his debts, and tlie title of the purchaser, if it rested on no other foundation, could not he supported, yet, where judgment is recovered against husband and wife jointíy, without any specific directions in the decree as to tlie estate out of which it is to be satisfied, it would seem that, as a general rule, it may be levied upon and be satisfied out of the property of either the husband or wife or of tlie community.
The operation of the rule may in some, cases be oppressive, but its severity would generally be felt by the husband. He is frequently joined, as a matter of form, on liabilities incurred by the wife, and which should be discharged out of her separate estate, which would be so decreed on a proper state of the pleadings; but the wife would he seldom made a codefendant with her husband to"answer to liabilities which should be charged upon his separate property. By the law each of the partners in the conjugal society is entitled to separate property; hut, even at common law, it seems that where a judgment is obtained against husband and wife, the writ of capias ad satisfaciendum may be issued against both; and the courts have in several eases refused to discharge the wife unless it appeared that there was collusion between the plaintiff and her husband, or that she was improperly joined in the action. (1 Taunt. R., 254; 3 Wils. R., 124; Barnes, 203; 2 Rop. H. and W., 129.)
The wife in this case was the beneficiary in the transaction whicli was tlie foundation of the action against herself and husband. Her land had been sold, and the proceeds, it must be presumed, were added to her separate property. She and her husband were charged with joint fraudulent representations in this sale, and of these charges they stand convicted by the judgment of the court; and it is hut equitable that her property should respond in damages for the frauds in which she participated in relation to her own property and which inured to her exclusive benefit. But at all events the purchaser is not affected by any equities which may have existed between husband and wife to have satisfaction of the debt out of a particular fund. The judgment hound the property of both. The execution directed the levy to be made on their property. The officer obeyed his instructions. And the title of the defendant cannot bo impeached on the ground that the separate property of the wife was not liable to execution in satisfaction of a joint judgment against husband and wife.
It may he said that there are cases in which a husband and wife must be joined in a suit to enforce the liabilities of the wife, as, for instance, on a debt contracted by her before marriage; and yet, if judgment be recovered durin» coverture, the debt becomes that of the husband, and must be enforced out of liis estate. This is unquestionably true at common law. The rule is of almost universal operation. Even where a wife lias a separate estate created by deed, yet, unless its transfer to her separate use should be deemed fraudulent as against her creditors, it is clear on tlie authorities that the wife, during the lifetime of her husband, could not he made liable out of this estate for any debts owing by her dum sola. (1 Comst. R., 472; 1 P. Wms. R., 470; *151 3 Id., 409.) But see Briscoe v. Kennedy, (1 Bro. R., 18, note.) In the case cited from 1 Comst. R., 472, it is considered extremely clear that by law the wife or her separate property is not liable for her debts before marriage during the lifetime of the husband. It appears, however, that where imprisonment for debt is authorized, the capias ad satisfaciendum may issue against both husband and wife for her debt when sole; and if the action be brought against the wife when sole, and pending the suit she marries, the capias shall be -awarded against herself alone. (3 Black. Com., 414; Cro. Jac., 323.) Chancellor Kent, in his Commentaries, states as the rule of law, that the wife, during coverture, cannot be taken on ca. sa. for her debt dum sola or a tort dum sola without her husband; and if he escapes or is not taken, the court, will not let her lie. in prison alone. It seems not a little strange that a wife, during coverture, may be. imprisoned for her debts dum sola, and yet her separate estate be exempted from liability. It would be unavailing, however, to prosecute this inquiry further, or to attempt to reconcile the authorities, if there be amy confiict. By none of these doctrines can the liabilities of husband or wife, under our laws’ for debt contracted by her when sole, be determined. Imprisonment for debt is not known to our jurisprudence; and the principal reason for charging the husband’s estate with the liability wholly fails under our rules regulating marital rights. By the common law marriage operated as a gift to the"husband of the wife's goods and chattels and of a freehold interest, in her lands; and though by deed she may have settled some of her property to her separate use, yet the remainder, if any, vested on marriage in the husband. Under such provisions there was a degree of justice in the rule that the husband should disci targe the wife’s debts. But under our laws none of the property of the wife can vest in the husband; and the reason of the rule (so far as it is founded on any reason) failing, the rule itself should become wholly Inoperative. (Callahan v. Patterson et al., 4 Tex. R., 61.)
But though the husband be not liable under the law of this State, .yet if judgment be entered against the husband and wife jointly, with nonspecific directions as to the estate which shall be charged with the debt, it would seem, as we have stated, that whatever may be the rule at common law, yet here the judgment will operate as a lien upon and may be satisfied out of the property of either or both.
We come now to the second proposition or assignment of error, viz, that if the judgment were binding on the property of the defendants, or of either of them, yet the execution and subsequent proceedings were illegal, and the acts under them confer no title on the purchaser.
The objections urged upon our attention were taken at the trial in the form of exceptions to the admissibility and legal effect of the evidence offered by the defendant. There are no bills of exceptions spread upon the record, but the objections are embodied in the statement of facts.
As it will be necessary to refer to certain provisions of the act concerning executions to determine whether the objections to the defendant’s title are valid, I will, in this place, transcribe some of the most important. (Acts of 1842, p. 66.) The 5th section directs the sheriff to advertise property seized by virtue of an execution at three public places in the county, at least twenty days for .slaves and land, and one of the advertisements to be posted up at the court-house of the county; and all sales of land and slaves shall be made at the court-house door of the county in which the sales take place on the first-Monday of the month, between the hours of 10 a. m. and 4 p. m., &c.
By the 6th section it is declared that if on the sale of the property more money is received than is sufficient to pay the amount of the execution or ■executions in the hands of the sheriff or other officer the surplus shall be immediately paid over to the defendant, his agent or attorney.
The 17th section requires appraisers to be appointed, “ who shall proceed to .appraise the property levied on at its fair cash value,” &c.
*152 The appraisement shall he reduced to writing and signed by the appraisers- or a majority of them. The sheriff or other officer shall then proceed to offer-the property so levied on and appraised for sale to the highest bidder for cash, 'and if the highest sum bid does not amount to two-thirds'of the valuation made by the appraisers, there shall be no sale.”
Section 22. That when a sale has been made and the terms thereof complied with, the sheriff, &c.. shall execute and deliver to the purchaser a conveyance of all the right, title, and interest and claim which the defendant had in and to the property sold.
The principal question to be determined is whether the authority of the-sheriff to sell property under execution is a mere naked statutory power which: must he strictly pursued in order that title may pass, and this to be proved by the purchaser, or whether the provisions of the statute are to be regarded in. general as directory to the sheriff, and if he make the sale authorized by law, his act will not be void as to bona fide purchasers, although lie may have committed irregularities in the manner of executing his authority, for which he will be responsible to the party injured. The subject is not free from difficulties, and there is a considerable diversity of opinion among the authorities so-far as they have been accessible to examination.
In Louisiana the doctrine was established at an early period when t.lie laws of Spain were in force, and it still continues to be the rule with some modification, that a purchaser claiming title under a forced sale of property must show that all the formalities required by law have been strictly and faithfully complied with ; otherwise the sale will be annulled. (3 La. R., 421; 7 N. S., 185 8 R. S., 246; 4 La. R., 150-207; 11 Mart. R., 610-675.) In a later case it was held that Where a purchaser át a sale under execution shows a judgment, writ of execution, and sale to him under them, made by the proper officer, all previous proceedings by the latter are presumed to have been correctly-made ; but this, like all other presumptions, yields to contrary proof. (9 La. R., 542.) But in the same case the maxim is again stated that in forced alienations of property the formalities required by law' must he fulfilled to give validity to-such alienations, and that persons interested may claim for the want of such formalities a rescission of the sales.' A forced alienation is defined in 11 Martin, 610, to be one resulting from a sale made at the time and in the manner prescribed by law, in virtue of an execution issuing on a judgment already rendered by a court of competent jurisdiction. The decisions of Louisiana are based on the principle that the power given the officer must be strictly pursued’ or his acts will be nuil. The act of sale is required by law to recite certain facts, (Code of Practice, 693,) and if these are omitted or any of them, the-bnyer has not such a conveyance as the law directs, and is, therefore, without title; and this would probably be sustained on the principles which have governed the decisions in most of the other States. But the doctrine is carried further in Louisiana, and extends to all the prerequisites or formalities of the sale, whether required to be placed on record or not, or recited in the act of' sale or otherwise.
In Massachusetts, New Hampshire, and Maine, and it is believed in Connecticut, the general principle has been established that the return of the sheriff' must show a strict compliance with all the requisitions of the statute; otherwise extents of land (equivalent to sales under our laws) are held void. But the statute in those States points out specifically the facts which shall be certified by the officer in his return, and the return must he recorded, and constitutes evidence of title.
The statute of New Hampshire, after giving specific instructions to the officer levying on real estate in satisfaction of ail execution as to the mode of its appraisement, and its being set off for the creditor, &c., requires the officer to deliver seizin and possession of the property so set off to the creditor or- *153 his attorney, and to make a lull return oí bis proceedings, and to cause the execution and return to be. recorded at length in the registry of deeds of the county, and returned to the, office of the clerk of the court to which it is by law returnable. (Rev. Stat. N. H., 394.) An examination of a few of the cases will show that, the validity of the title depends on the sufficiency of the return, and this again depends upon their having been a full compliance with, the. statute, as the return must contain a report, at length of all the proceedings of the sheriff, and consequently it furnishes evidence whether the requisitions of the law have been observed or not.
In Porter et al. v. Bean, (1 N. H. R., 306,) in which title by extent under execution was pleaded, the court said : “The title in this case is by statute ; and a conformity to its provisions must evince its validity. In Libbey v. Copp (3 N. H. R., 40) Lbe court held it to be well settled that nothing will pass by an extent of an execution upon land unless everything required by the statute to make a valid extent is expressly stated or necessarily implied in what is stated in the officer's return. And a motion to permit the return to be amended, so as to make valid the extent, was overruled. The same rule of law was reiterated in 3 N. H. R., 88. In Whitler v. Varney (10 N. H. R., 294) several cases were, cited from the New Hampshire, Massachusetts, and Maine Reports, in which extents we.re held void on the ground that the return of the officer did not show that all the requisitions of the statute in relation to appraisement had been duly observed, but it was held that the return in that case, indicating that in making the extent the legal formalities were probably complied with„ an amendment might be made notwithstanding the intervening of a subsequent purchaser or creditor, and that that amendment, when made, should relate back to the time of the levy or return.
In Vermont, where the statute is similar to those of New Hampshire, Massachusetts, &e., an extent of lands under execution, by which the estate of one man, by operation of law, is passed to another, has always been considered a proceeding stricti juris; and hence it has been uniformly held that all the material facts necessary to show that the law has been complied with, should appear by the officer’s return. (Sleeper v. Newbern Seminary et al., 19 Vt. R., 453. See also 26 Me. R., 277; Id., 411; 4 Mass. R., 402; 17 Id., 243; 9 Id., 242; 2 Id., 154; 2 Mas. C. C. R., 71.)
Under statutes of this character, where the return must show $11 the proceedings of the officer, no parol proof is admitted to establish his acts. The return in writing furnishes authentic and the only evidence, and by law it constitutes a portion of the title. Under the statute it must embrace certain specific facts, and if these are not embodied, the title, has not the requisites prescribed by law, and cannot operate, therefore, as a legal transfer of the property. But in most of the States the rule is well settled that a purchaser is not bound, nor is Ills purchase affected, by the irregularities of the sheriff, committed in making the sale, where such irregularity has taken place without the concurrence or participation of the purchaser. (3 Da. R., 621 ; 7 Mon. R., 622; 10 S. & M., 246 ; 2 Ala. R., N. S., 682; 1 Green R., 212.) But a clear distinction is recognized to exist between a sale without authority and one where there is an authority not strictly pursued: in the former case] the sale is void; in the latter, the title will pass, and the party injured by the irregular acts of the officer will be left to his remedy against him for the injury. (3 Marsh. R., 619.) In Williamson v. Farrow it is said to he the general rule, as to purchasers at sheriffs’ sales, that where the defect in the proceedings is such a one as may be cured by consent, acquiescence, or amendment, it does not affect the title. But where it is a defect of substance, as a want of authority from the court, or where the authority is absolutely void, it vitiates aud destroys the sale and title under it. (1 Bail. R., 219.)
It will be remembered that the act concerning executions in this State does not direct the manner in which the return of the officer shall be made, *154 or what facts shall he stated. It does not require the return to embrace all the proceedings of the sheriff, or that it shall be recorded in the registry of deeds, or that it shall constitute record evidence of the purchaser’s title. He is subjected to a severe penalty should he fail to make a return of the writ, or to make a levy when in his power to do so, or to advertise and offer for sale any property levied on by him, and to shield himself from responsibility, he should comply strictly with tlie requisitions of the law. (Acts of 1842, p. 71, sec. 23.) But the statute nowhere declares the facts that shall be stated in his return, or that the sale shall be void unless all the legal formalities have been pursued. Nor does the statute impose on the purchaser the duty of proving by the return in writing, or by parol evidence, that the officer has not deviated in his acts from the mode prescribed by the statute for the execution of his authority.
Having presented these observations, I will proceed to examine the objections that have been urged to the title of the defendant, but not in the order in which they were taken at the trial, nor in which they are arranged in the argument of counsel. It is objected that the levy is not signed by the sheriff. This does not appear to have been taken in the court below, and is therefore not now entitled to consideration. But it is sufficiently answered by the fact that the. levy constitutes but A portion of the return of the sheriff, which was duly signed by him under his official signature.
A second ground of exception to the evidence of defendant was that there was no proof of advertisement of the sale as required by law. It is incumbent upon the officer that due notice should be given of the sale by publication, and if he failed to do so the plaintiff in execution has his remedy against him by .statute; and the defendant, if he suffer injury, can, under the law, claim redress. But under statutes similar to our own it has not been considered that the omission to perform tills duty or its defective execution would invalidate the title of the purchaser, or, at all events, that it is incumbent on him to show affirmatively that the duty had been performed. In Turner v. McCrea the court say that the act imposed it as a duty on the sheriff to advertise .all his sales in the public gazette, but his failing to do so could not invalidate the sale. If any damage resulted to the defendant from his failure to comply with the requisites of the act, he would be entitled to his action for the recovery of damages; but it was not incumbent on the purchaser to see that this duty had been performed by the sheriff. The title of the purchaser could not depend on such perishable testimony. If it would be necessary to have proved compliance with the requisites of the act in any suit, it would be equally so in a suit which the purchaser may be compelled to bring fifty years after the sale. (1 N. & McC. K., 12.) In Maddox v. Sullivan et al. the property had not been advertised the length of time directed by the statute, nor at but one place instead of three, as provided by law. The court held that these were but irregularities or omissions of the sheriff in the discharge of the duties of his office, and that they do not vitiate a sale made by him had been so long and fully settled, and on such well-defined principles, as to render all commentary upon them unnecessary. (2 Rich. Bq. R., 4.) In Lawrence v. Speed (2 Bibb R.., 401) it was held that if a sheriff fails to advertise a sale of property under ■execution according to law, he may subject himself to damages, but it does not affect the right of a purchaser, unless through fraud the sheriff' has omitted to advertise, and the purchaser had knowledge of the fraud. The statute of Kentucky had not declared the consequences of a failure to advertise, and the court held, on solid grounds of argument, that the rule as above laid down was dictated by sound policy, and was equally expedient., whether the interest -of the owner or purchaser of the property was regarded. In Hayden v. Dunlap (3 Bibb R., 217) the same doctrine was held, but it was also ruled that if the sheriff declares he has not advertised, and refuses to sell, and the purchaser indemnifies the sheriff, the sale will be regarded as fraudulent, and be set aside. (See also 3 J. J. Marsh. R., 208.)
*155 In 10 Smedes & Marshall, p. 246, the rules of law as to the legal effect of. Si-regularities in the proceedings of the officer in making sales under execution were elaborately discussed by the counsel and the court; and it was hold that the irregularities of the sheriff in giving- notice of the sale of real property under execution will not vitiate the title of a bona fide purchaser at such sale, nor will a total omission by the sheriff to give the notice, or his giving it in a .mode entirely different front that prescribed by law, affect the title of the bona fide purchaser who has no knowledge of the misconduct of the sheriff. These cases are sufficient to show that it may be regarded as a settled rule that a defective notice or want of publication of the sale of property under execution will not vitiate the title of the purchaser. The fact of due notice having been given could but seldom be ascertained by those desirous of purchasing at public sale.; and as sound policy requires that property under a forced alienation should bring a fair price, this will be best promoted by protecting the rights of the purchaser from being vitiated by the irregular acts of an officer, or from his being subjected to the peril of sustaining, at perhaps a distant period, their legality by perishable parol evidence.
It is further objected that there was no proof by the defendant that the sale under the execution was made at the time and place required by law. The defendant in execution appeared at the sale and appointed an appraiser, and it might he plausibly urged that he consented to the sale, and that this cured the defect, if it had even been the fact that the sale was made at a time and place not directed by the statute. But, however that may he, it is sufficient to say that the prima facie presumption is that the officer discharged his duty, and that the sale was made at the court-house of the county, and on the first Tuesday of the month, according to the requisitions of the law. The presumption is in favor of the title and will support it, unless rebutted by proof to the contrary. Were the return required to embody all the facts, and made evidence of title, the objection that the time and place had not been established would have been a fatal defect. But such is not the law; and where the return does not state facts to the contrary, the presumption would he that the officer had not exceeded his authority. The return is in this ease defective in not stating the place, nor with sufficient certainty the time of the sale, but it states a fact which would have enabled the plaintiffs to prove with facility that the sale did not take place on the first Tuesday of the month, if such had been the truth. The sheriff certifies that the sale took place on the 3d of June, 1845. If this be not the first Tuesday of that month, the fact should have been proved by the plaintiffs; and if established, it would have invalidated the title of the purchaser. This objection is of a different character from that of a want of notice of sale. The former is an objection to a want of power in the officer; the latter to an irregular exercise of legitimate authority. For the latter the officer maybe punished, but the title of the purchaser cannot he affected. But where the time and place of a public sale are prescribed, the sheriff has no authority to sell at any other time or place, and should lie do so, his acts are not merely irregular, but void, and can confer no title. This distinction can operate no hardship on purchasers or destruction of the rights of Innocent parties. A purchaser may not be apprised of the want of due notice of a sale, and would in most cases be ignorant whether it had been duly made or not _; but he must be presumed to know the law, and consequently whether a public sale is made at a time and place prescribed by the law or not. (1 Bail. R., 618; 12 S. & M. R., 147.) But it was not proved that the sheriff had in the particulars referred to acted beyond the pale of his authority, and this objection to the judgment cannot, therefore, he supported.
Several exceptions were taken to the admissibility of the deed of conveyance in evidence. One is that it purports to be founded upon an execution issued and tested March 18, 1845, whereas the execution in the record is issued and tested May 5. The statute directs the sheriff, alter sale has been made and the terms complied with, to execute and deliver a convey- *156 anee to Hie purchaser, but does not prescribe the facts which shall he stated in the deed, or (hat the authority under which the sheriff acted shall be recited. The recital in the deed is not made by the statute, nor is it on general principles of law a substantial and efficient part of it, nor is it evidence of the facts, recited in it, except between the immediate parties to it. (Phil. Ev., 350.) In Harrison v. Maxwell (2 N. & McC. R., 347) the deed from the sheriff recited (hut the execution had issued from the court of one district, when in fact it had issued from the court of another. It was held that this misrecital was not fatal to the title The, legal effect and advantages of recitals in deeds were slated in the opinion of the court. The usage, of incorporating in the sheriff’s deed a recital of the authority under which he sold was commended as productive of great convenience as well to the sheriff" as to the purchaser. It would point the former to his authority to sell, and would facilitate the latter in deriving his title; but it was held to be not indispensable. The recital of the power to sell and convey did not give the right, nor was it evidence of the right. It is sufficient if the, right did exist and the seller acted upon it.
The misrecital of a judgment in a sheriff’s deed is not material if it in fact appear that the sale was under a subsisting judgment and execution, a recital not. being a material part of a deed. (5 Cow. R., 529; 1 Overt. R., 209; 2. McLean R., 59; 1 Ired. R., 438. An execution need not be recited in the sheriff’s deed, and if recited inaccurately, it will not vitiate the deed. (9 Cow. R., 182; 10 Johns. R., 381.) A variance between the sheriff’s deed and the levy indorsed on the execution is not a valid objection to the. admission of the execution or deed in evidence; nor is the. mere recital of a wrong date of the execution any objection to the admission of the execution in evidence. (1 Ala. R., 540.)
These authorities establish the rule that a recital in the deed of the authority of thee officer being an immaterial part of the conveyance, no mistake or mis-recital can impair its legal validity or effect. There must be a subsisting judgment and execution under which the sale is to be made; but as the recital of either is not material, so a mistake will not affect the title. (1 Green R., 214.)
Another objection to the deed is its vagueness in description of the premises. When the description of land in a deed is so indefinite that it cannot be identified with certainty, the deed becomes necessarily void and conveys no title. But the objection here may be disposed of with the single remark that the description of the land sued for, as set forth in the plaintiff’s petition, is almost identical with the description of the'land in the sheriffs deed. No one can doubt that the premises described in the former are conveyed by the latter.
There is an objection also that the product of the sale is erroneous. This cannot affect the validity of the title. The sheriff computes the principal, interest, and costs at $686.71, and the counsel at $682.61. This is an unimportant difference, and if (.here were any mistake, the sheriff could have been compelled to refund the surplus to the defendants in execution.
The next exception to the admissibility of the deed is more important, and is based on the fact that it did not convey the land as levied on or appraised, but a part thereof, including, as it was said, though not proved, the whole of t lie river front. The sheriff" in his return certifies that he levied upon one-quarter of a league of land; that this was appraised at one dollar per acre; that he offered the lands, or so much of them as would satisfy debt, interest, and costs, amounting to six hundred and eighty-six dollars and seventy-one cents. The deed conveys ten hundred and thirty acres, the quantity of land sufficient, at two-thirds of its appraised value, to satisfy the execution, and about seventy-seven acres less than the quarter of the league which had been levied on and appraised. The statute directs the property'levied upon to be, appraised at its fair cash value; that the appraisement shall be reduced to writing, and the officer shall then proceed to offer the property so levied on *157 ¡and appraised for sale to the highest biddo.r for cash ; and if the highest, smn bid does not amount to two-thirds of the valuation made by the appraisers there shall be no sale. It is manifest from the terms of the statute that tins sheriff has no authority to expose to sale any part less than the whole amount •of the property levied on and appraised. 'File instruction to sell the property levied on and appraised carries with it the force of an affirmative mandate repelling or forbidding any conclusion to the contrary or any inference that -it was discretionary with the officer to sell the whole or only a portion of tile .property.
The policy of the provision is not a question for consideration. Whatever may have been the object of the Legislature, it is clear that this provision was not sanctioned hastily or without deliberation. The previous statute on the subject of executions had required, in case the land should be more than sufficient to pay the execution and costs at two-thirds of its appraised value, that the appraisers should take off at one corner of the survey so much as would at the valuation be sufficient to satisfy the execution and costs, and thereupon she sheriff should offer the land for sale, &c.. and whoever would pay the said execution, &c., for the fewest number of acres, should be the purchaser. .(Acts of 1839, p. 155, sec. 15.)
These instructions, directing in effect that no more land than would be sufficient to pay the debt should "be sold, were entirely omitted in the act under which the sale in question was had. It will not be questioned that if the sheriff had under the former statute sold all the laud levied upon, notwithstanding two-thirds of its appraised value exceeded the debt and a portion sufficient for that purpose had been set off' at one corner of the survey, or if he had sold more than the number of acres necessary ¿it the highest bid to discharge the execution, the sale would have been radically defective and totally void; and this upon the ground that the officer had transcended his authority, and his acts consequently could have no more validity in transferring the property of one person to another than if as a private citizen he had sold property to which he had no right, title, or interest. Though the soundness of the policy of the provisions of the latter statute may not be very clear, yet the acts of the officer in contravention of them are void and without effect. His act in selling less land cannot be classed with irregularities in the discharge •of his authority which do not affect the title of the purchaser, provided they take place without his knowledge or participation. A purchaser is not bound to know whether the sheriff had advertised or not; nor is he affected by mistakes of the officer in immaterial acts; but he must know that all the property which is levied upon and appraised must be sold. The property levied upon ■is to be appraised and then exposed to sale, and unless two-thirds of the appraised valuation be bid there shall be no sale. These limitations upon the authority of the officer in the sale of property every purchaser is required to know. They are clearly pointed out by the statute and are not difficult of comprehension. The law declares that unless two-thirds of the appraised valuation be offered there shall be no sale. The amount of appraisement must be previous!}' ascertained by the purchaser in order that he may make an available bid. In this ease two-thirds of the appraised value of the quarter of a league would amount to seven hundred and thirty-eight dollars, and this should have been offered, otherwise by law there could have been no sale. The amount ■of property levied upon, its appraisement and the sum to be offered, are facts which must be necessarily known to the purchaser. The duties of the sheriff In these particulars are not positively prescribed, but they can neither •be mistaken by him nor the purchaser; and whether his performance of them is in accordance with law is as well known to the purchaser as to the officer. The distinction between acts done by an officer without authority and those ■done or omitted in its irregular exercise has been previously stated. The former are nullities, and confer no right; the latter do not affect titles acquired under the acts of the officer unless the purchaser be implicated.
By statute in Kentucky the sheriff is directed to sell no more land than ma/ *158 be necessary to satisfy an execution, and sales have been frequently set aside on the ground that the sheriff, in selling too much land, has exceeded his authority, and the distinction between the unauthorized and the irregular acts of an officer is taken and clearly defined. (3 A. K. Marsh. R., 620; 6 Mon. R., 33; 5 Da. R., 278.)
We are of opinion, on the principles above stated, that the sale and deed of the sheriff are void, and cannot support the title of the defendant.
But here an important question arises as to the effect which this decision, avoiding the sale and conveyance, should, in law and according to the course of our system of procedure, have on the rights of the parties. We have repeatedly determined that the legal and equitable rights of parties litigant in relation to the subject-matter of a controversy should, as far as practicable, be set up and determined in a single suit. In the due order of pleading under our blended system the plaintiffs should have averred their willingness to pay the amount of the execution with interest thereon; or the defendant should have claimed, provided his title were declared invalid, that he should not be compelled to restore possession until the purchase-money which he had paid for the benefit of the plaintiffs, and by which the judgment against them had been discharged, should be reimbursed and he indemnified. There is no charge, nor any pretense or evidence that the defendant has been guilty of any fraud in the transaction, or that there was any fraudulent combination between the defendant and the public officer to the injury of the plaintiffs. Had the proceedings contained the necessary allegations for the adjudication of the equitable as well as legal rights of the parties, as should under our system have been the case, the court, under the facts of the case, must necessarily have decreed that the execution should be discharged before the sale be set aside; or if the purchaser had been a third party, and not the creditor in the execution, that the amount paid by him towards the discharge of the execution should be refunded before a restoration of the property would be decreed.
This principle of equity has been repeatedly recognized by the courts of chancery. It was a well-established rule under the Spanish system of jurisprudence, and its justice should commend its adoption and recognition in all codes and by all courts. In Dufour v. Camfranc (11 Mart. R., 610) the court, having declared a sale by the sheriff void, proceed to say: “Another question presents itself. It has been proved that proceeds arising from the sale of the slaves were applied to the discharge of the judgment debts of the plaintiff, and the court is of opinion that he cannot recover in this suit until he repay the money. This is the doctrine expressly laid down by Fabrero, Lib. 3, Cap. 2, sec. 5, n. 357, and we readily adopt it; for nothing can be more unjust than to permit a. debtor to recover back his property because the sale was irregular, and yet allow him to profit by that irregular sale to discharge his debts.”
This principle has been frequently recognized by the decisions in Kentucky. The proceedings in law will, by courts of equity, be treated as valid, though they may be erroneous. But equity will relieve against their consequences, because the rights thereby acquired cannot be retained in conscience. The purchaser will be treated as a trustee, and he will not be compelled to surrender until equity is done him. (7 Mon. R., 615; 8 Dan. R., 183; 3 Id., 623.)
The case in 8 Dana 183 is analogous in principle. In that ease the-property sold under execution had been recovered by a third person, and the action was brought to compel the defendant in execution to reimburse the amount of the purchase-money. The court held that the purchaser of property sold under execution has a right in equity, when the property is recovered from him or his vendee by virtue of a superior title, to be substituted for the creditor, and have the amount of his purchase-money refunded to him by the defendant in execution. His equity rests not upon the want of knowledge as to title in the property, but on the ground of his having discharged a judgment against the defendant, for which he stood chargeable by a purchase made under the coercive process of the law, and therefore has an equitable claim to reimbursement by the defendant in execution.
Note 5á. — Taylor v. Harris, 21 T., 438; Cayce v. Powell, 20 T., 767.
Note 55. — O’Brien v. Hilburn, 9 T., 297; Cross v. Everts, 28 T., 523; McQueen v. Fulgham, 27' T., 463.
Note 56. — Sydnor v. Roberts, 13 T., 598; Hancock v. Metz, 15 T., 205; Coffee v. Silvan, 15 T., 354; Criswell v. Ragsdale, 18 T., 443; Andrews v. Richardson, 21 T., 287; Castro v. lilies, 22 T., 479; Ayres v. Duprey, 27 T., 593; Hawley v. Bullock, 29 T., 216; Johnston v. Shaw, 33 T., 585; Gráveos-te. Wilson, 35 T., 52; Boygen v. Howard, 40 T., 153.
Note 57. — Miller v. Alexander, 13 T., 497.
Note 58. — Grace v. Garnett, 38 T., 156. An administrator’s or guardian’s sale made at a time or place not authorized by law is void unless confirmed by the court. (Peters v. Catón, 6 T., 654; Brown v. Christie, 27 T., 73; Tippett v. Mize, 30 T., 361.)
Note 59. — Jones v. Taylor, 7 T., 240; Sadler v. Anderson, 17 T., 245; Leland v. Wilson, 34 T., 79.
Note 60. — This decision is not applicable to sales without appraisement. (Luter v. Rose, 16-T., 52.)
Note 61. — Bailey v. White, 13 T., 114; Brown v. Lane, 19 T., 203; Andrews v. Richardson, 21 T., 287; Morton v. Welborn, 21 T., 772; Calhoun v. Wright, 23 T., 522; Stone v. Darnell, 25 T.. Supp., 403; Johnson v. Caldwell, 38 T., 217.
Other questions of importance are suggested by the position of the parties in this cause, viz: whether the lien of the execution and levy is extinguished, or whether they may be revived by quashing the return and sale, &e.
We are of opinion that the rights of the parties, as indicated in this opinion, should be adjudicated without the necessity of resorting to a new proceeding for that purpose. A multiplicity of actions is repugnant to the simplicity of our system of procedure, and should not be tolerated.
It is ordered, adjudged, and decreed that the judgment be reversed and the cause remanded for a new trial; that the parties have leave to amend their pleadings; and that such further proceedings be had as may to law and justice appertain. ,
Judgment reversed.