MENEFEE et al. v. COLLEY.  (No. 1858.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 7, 1917. Rehearing Denied Jan. 3, 1918.)

1. TRESPASS TO TRY TITLE ⬤➡41(1) — EVIDENCE—TITLE.

In trespass to try title, proof by plaintiff of actual possession, under claim of ownership, without reference to whether it was continuous within the statute of limitations or not, was prima facie evidence of title, sufficient, unless rebutted, to authorize recovery against a defendant entering upon the land a few months before and taking possession thereof from a tenant without plaintiff's consent.

2. EXECUTION ⬤➡320 — RECITALS IN SHERIFF'S DEED.

Recital in sheriff's deed that it was made under an alias execution on a judgment, after proper levy and advertisement, is not conclusive, though a long time has elapsed since the date of such deed, but it is merely some evidence such execution was issued and levied; such recital not being one the sheriff is required to make in discharge of his official duty.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by Mary E. Colley against Joseph Menefee and another. From judgment for plaintiff, defendants appeal. Affirmed.

The suit was by appellee against appellants Joseph Menefee and Henry Lacy. It was to try the title to and for possession of 730 acres of the Brooks Williams survey in Cherokee county. Appellants disclaimed title to all except 556 acres of the land, and answered, as to the 556 acres, by a plea of "not guilty." The trial was to the court without a jury. The appeal is from a judgment in favor of appellee for the whole of the 730-acre tract. It appeared that appellant Lacy was a tenant of his co-appellant, and that his rights, if any he had, were referable entirely to his tenancy. Therefore the fact that he is a party to the appeal will be ignored in what is to be said, and the controversy will be treated as one between Menefee and appellee only, as it in fact is.

Hurt & Hurt and Geo. A. Titterington, both of Dallas, for appellants. Thomas B. Greenwood, of Palestine, for appellee.

WILLSON, C. J. (after stating the facts as above). The court found that from 1878 to the trial of the case in February, 1917, appellee openly claimed to own the 730-acre tract (of which the 556 acres in controversy were a part) described in her petition, and that each of the years intervening, except the year 1905, having rendered same for the purpose, she paid all taxes assessed against the land. The court further found that during periods of four years and less each between 1878 and 1901, appellee (by tenants) was in actual possession of the land, and that continuously from 1901 to November 21, 1916, she, claiming a right to it under a deed (describing it) to her and her deceased husband (whose interest she had acquired) from heirs of Wm. Bradshaw, deceased (under whom appellants claimed), dated December 9, 1886, and duly recorded May 2, 1896, by tenants had actual, peaceable, and adverse possession of the land, using and enjoying it and cultivating portions of the 556 acres thereof claimed by appellant. The court further found that appellant "on advice of counsel camped on the 556 acres, which was then in the actual possession of plaintiff's tenants, and boarded with one of plaintiff's tenants from August to November 21, 1916," when "plaintiff's tenants vacated the land," leaving appellant in possession thereof. The finding that appellee's possession of the land was continuous from 1901 to November 21, 1916, is attacked on the ground that it was without the support of testimony. The sufficiency of the testimony to support the other findings specified is not questioned in any of the assignments.

[1] A phase of the case presented by the unchallenged findings specified therefore is that appellee was in the actual possession of the land, claiming to own it when appellant entered upon same and took the possession thereof from her tenant without her consent, and was holding same at the time of the trial.

Such prior actual possession by appellee, without reference to whether it was continuous within the meaning of the statute of limitations or not, was prima facie evidence of title in her and entitled her to recover as she did, unless it was rebutted by testimony showing that she did not have the title. Keys v. Mason, 44 Tex. 140; House v. Reavis, 89 Tex. 626, 35 S. W. 1063; Kirby v. Boaz, 41 Tex. Civ. App. 282, 91 S. W. 642; Randell v. Robinson, 172 S. W. 735; Teagarden v. Patten, 48 Tex. Civ. App. 571, 107 S. W. 909.

Appellant claims that the presumption of title in appellee arising from her prior possession of the land was overcome by testimony showing that the title was in him and others, as heirs of one Walter West or his descendants; or if it was not, that it was in one G. W. Copeland. The claim is predicated on testimony showing, as found by the court: (1) That Rusk and Henderson for the use of Starr, on November 3, 1851, recovered a judgment against Wm. Bradshaw and others for $1,231; (2) that on September 5, 1853, the sheriff of Cherokee county, as such, by a deed containing a recital that it was made

"under an alias execution on said judgment after proper levy and advertisement," conveyed "all of the right, title, and interest of Wm. Bradshaw" in the land to J. S. Able and W. P. Brittain, who conveyed to G. W. Copeland May 10, 1854, who conveyed the title he derived from Able to Jesse Duren November 24, 1885, who conveyed the 556 acres in controversy to Walter West January 30, 1860; that said West resided on said 556 acres from 1860 to November 27, 1866, when he died intestate; (3) that appellant's mother, who died before this suit was commenced, was a daughter of said West, and after his death married T. A. Lindsey (appellant's stepfather), who resided on the 556 acres until about 1872.

[2] The conclusion of the court, in the face of the findings specified, that appellants had wholly failed "to establish any title whatsoever in themselves," is challenged as unauthorized. The conclusion was based on a further finding made by the court "that no valid execution was issued on said judgment (in favor of Rusk and Henderson for the use of Starr against Wm. Bradshaw), and that no valid sheriff's sale was ever made under any execution on said judgment." The parties having agreed "that after proper search no execution or sheriff's return thereon" issued on the judgment in question could be found, appellant insists that the court should have treated the recital in the sheriff's deed as establishing as a fact that an execution was issued on the judgment and levied upon the land. If it should be conceded that the court might, because of the long time which had elapsed between the date of the sheriff's deed and the date of the trial, have presumed that an execution was issued on the judgment, it must be further conceded that he was not bound to indulge such a presumption. The recital by the sheriff in his deed was not one he was required to make in the discharge of his official duty. Howard v. North, 5 Tex. 290, 51 Am. Dec. 769; and see 3 Freeman on Executions, § 329. The most appellant had a right to claim on account of the recital was that the court under the circumstances of the case should consider it as evidence on the issue as to whether the title of Wm. Bradshaw passed to Able and Brittain by a sale made by the sheriff under the judgment or not. We think the conclusions of the court that the sheriff was not authorized by a valid execution issued on that judgment to sell the land, and therefore that the title in Wm. Bradshaw did not pass to Able and Brittain, were amply supported by testimony showing that in a suit commenced by Wm. Bradshaw against Jesse Duren in 1859 judgment was rendered in 1869 in favor of said Bradshaw's administrator against Duren's administrator; that it was determined by the finding of a jury in that case that Duren's claim of title to the land by virtue of a

sheriff's sale thereof was "fraudulent and illegal"; and that on September 21, 1872, by virtue of a writ issued August 12, 1872, on the judgment in his favor, Wm. Bradshaw's administrator was by the sheriff of Cherokee county placed in possession of the land "by agreement of parties living on said land." The "parties" then living on the land, it seems from the testimony and findings of the court, were parties who claimed a right to be there as the successors to the title in Walter West. It was not shown that any one ever in any way asserted a claim to the land under the sheriff's deed between 1872, when the administrator of Wm. Bradshaw was placed in possession thereof as stated, and 1916, when appellant took possession thereof as stated. A fair inference from the facts recited was, we think, that the sale by the sheriff was not authorized by an execution issued on the judgment. If the sale was not so authorized, it was, of course, void, and the sheriff's deed passed nothing to the purchaser. Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53.

Having reached the conclusion that findings of the court specified were authorized by the testimony and support the judgment, it is not necessary to inquire whether other findings made by the court, and which also sufficiently support the judgment, were authorized by the testimony or not.

The judgment is affirmed.

