### CARVER v. MOORE. (No. 638–4500.)

(Commission of Appeals of Texas, Section B. Nov. 17, 1926.)

**1. Limitation of actions ⊚⟹28(1), 100(1).**

Action for damages for deceit in land trade between strangers is barred two years from time that fraud could have been discovered by use of reasonable diligence.

**2. Limitation of actions ⊚⟹100(11)—Statute of limitations against action for deceit in land trade, in that location of land was misrepresented, held to run from time location could have been discovered by exercise of ordinary diligence.**

Two-year statute of limitations against action for damages for deceit in land trade between strangers, in that location of land was misrepresented, *held* to run from time location of land could have been discovered by exercise of ordinary diligence, and not from time that confidence in representations ceased to exist.

**3. Limitation of actions ⊚⟹100(11)—That third person was in possession of land to be exchanged held such notice of false representations as to its location as to start statute of limitations against action for deceit.**

That third person was in possession of land to be exchanged *held* such notice to one accepting it that false representations as to true location of land had been made as to start statute of limitations against action for deceit, notwithstanding custom of landowners to permit their land to be inclosed and used by others.

**4. Limitation of actions ⊚⟹100(13)—Failure of one in possession to reply to letters offering to sell or rent land held to put sender who had taken land in trade on inquiry as to true location of his land.**

Failure of one in possession of pasture, which was pointed out as land to be conveyed, to reply to four letters of one who had accepted land in trade offering to sell or rent it, *held* to put latter on inquiry as to true location of his land so as to start statute of limitations against action for deceit in trade.

**5. Limitation of actions ⊚⟹100(11).**

As respects limitations, one accepting land in trade, with actual notice of possession of third party, has duty to ascertain nature of such possession.

**6. Limitation of actions ⊚⟹100(13)—As respects limitations, one who leased land which he had accepted in trade held to have constructive notice of its location.**

As respects limitations, one who leased land which he had accepted in trade *held* to have constructive notice of its location, since possession of tenant is possession of landlord.

**7. Equity ⊚⟹64.**

Equity rewards diligent, not those who sleep on their rights.

**8. Limitation of actions ⊚⟹1.**

Statutes of limitation are rules of law, not equity.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by T. T. Moore against O. B. Carver. Judgment for plaintiff was affirmed by the Court of Civil Appeals (275 S. W. 90, 682), and defendant brings error. Reversed and rendered.

Robt. W. Stayton, of Austin, A. L. Curtis, of Belton, and Chas. L. Black, of Austin, for plaintiff in error.

W. R. Brown, and Jno. B. Daniel, both of Temple, for defendant in error.

POWELL, P. J. The nature and result of this case in the trial court are fully stated in the opinion of the Court of Civil Appeals. See 275 S. W. 90. On motion for rehearing, the Court of Civil Appeals wrote a brief opinion, reported in same volume at page 682. Summarizing the nature of the suit, the Court of Civil Appeals speaks as follows:

"T. T. Moore sued C. B. Carver for damages for fraud in the exchange of lands. Carver, whose lands consisted of eight sections of 640 acres each in Culberson county, through his agents, showed Moore level grazing lands in what was known as the Ed. Jones pasture, but his deed conveyed to Carver eight sections in a rugged, mountainous section several miles away from the lands shown him. The case was submitted to a jury on special issues, and upon their findings the court rendered judgment in favor of Moore for $22,014.28, from which judgment this appeal is prosecuted."

The court of Civil Appeals affirmed the judgment of the district court.

[1, 2] At the conclusion of the evidence, plaintiff in error requested a peremptory instruction. The controlling question here is whether or not that instruction, under the undisputed facts of this case, should have been given. The alleged fraud was committed September 14, 1917, but no suit was instituted until September 4, 1923. It is claimed by plaintiff in error that the cause of action was long since barred by limitation when it was instituted. These parties sustain no special or confidential relation to each other. They were just two ordinary men who made a trade. It is well settled in our state that this action for damages for deceit was barred in two years from the time the fraud, by the use of reasonable diligence, could have been discovered. The Court of Civil Appeals, in the case at bar, takes no issue with us in aforesaid statement. We think it is equally well settled that the statute begins to run, not from the time Moore's confidence in the

---

representations of Carver ceased to exist, but from the time when the exact location of his land in Culberson county could have been discovered by the exercise of ordinary diligence. In sustaining our views just above expressed, we quote as follows from the opinion of our Supreme Court in the leading case of Bass v. James, 83 Tex. 110, 18 S. W. 336:

"It is contended by appellant that this suit, being brought less than two years from the time he actually discovered the representations of appellee were false and fraudulent, is in time, as limitation commences to run from such discovery. The law is that limitation will begin to run in cases of fraud from the time when by the use of reasonable diligence it could have been discovered. Alston v. Richardson, 51 Tex. 6; Kuhlman v. Baker, 50 Tex. 636; Smith v. Fly, 24 Tex. 350 [76 Am. Dec. 109].

"Appellant relies upon his former confidence in the integrity and veracity of appellee as an excuse in failing to resort to the usual methods to ascertain the quantity of land he was buying. He says he had no reason to doubt that such representations as to quantity were true, and he only ascertained that they were false when he had a survey made in October, 1890, in order to ascertain the extent of the right of way of the St. Louis, Arkansas & Texas Railway. More than three years elapsed from the time of making the representations in October, 1887, to the filing of the suit in November, 1890. It does not appear from the evidence that during this interval appellee made any representations or did anything that was calculated to keep alive the effect produced by the representations made when he sold the land, or that was calculated to induce appellant not to use reasonable diligence to discover and ascertain the quantity of land contained in the calls of his deed. As said by the court in Kuhlman v. Baker, 50 Tex. 636: 'If the alleged fraud constituted a sufficient reason why appellant did not at the time the sale was made discover that the quantity was not as represented, his subsequent failure to inform himself of such an important matter as the quantity of land contained in the tract purchased was attributable to his neglect and want of ordinary precaution. It does not appear that after the sale any intervening representations were made by appellee as to the quantity of land that would induce appellant to relax the diligence required of him as an ordinary prudent man to ascertain the quantity of land he actually purchased.' If the existence of confidence in the integrity and veracity of the vendor is a sufficient excuse to relieve the vendee from the use of ordinary diligence to discover so important a matter as the quantity of land sold, then this excuse would be effective so long as the confidence continued, and limitation would commence to run not from the time that the quantity of land could have been discovered by the exercise of ordinary diligence, but from the time the confidence ceased to exist. We do not believe it is the policy of the law that this operation of the statute should depend upon such an uncertain contingency, the happening of which is dependent upon a 'chapter of accidents.' The presumption is, that if the party affected by the fraudulent transaction might with ordinary care have seasonably detected it, he seasonably had actual knowledge of it.

"If three years after the transaction the appellant by methods then used successfully detected the fraud, we see no reason why a resort to such methods before then could not have accomplished the same purpose. We think the court rightfully held the action barred."

[3] In the case at bar it is not contended that Carver said anything to Moore, after the deal was first made, which caused him to refrain from exercising ordinary care to see where his new land was located. In fact, there seems to have been no further negotiations between the parties after the deal was first made. So Moore, of his own accord, and uninfluenced by anything Carver said or did, exercised no diligence for nearly six years to see exactly where his Culberson county land was located. It is clear that the exercise of any diligence whatever, at any time, would have discovered the fraud. Finally, upon receiving some kind of circular letter from a tax official in that part of the state warning him against land sharks, Moore awoke. When he finally did this, and made his investigation, he discovered the fraud in a day or so, and this suit followed at once. It could have been just as easily discovered in one month after the trade was made. So, if the facts surrounding this case were such as to put Moore upon inquiry as to the location of his land, then we must hold, as a matter of law, that such inquiry so pursued would have led to an immediate discovery of the fraud. Now, what were the circumstances which should have put Moore upon inquiry? In the first place, Carver told him before making the trade that the land was in the possession of one Jones, but that such possession made no difference, because every now and then the West Texas ranchmen fenced the lands of others without their consent, or without making any adverse claim thereto. Before closing the deal, Moore went to the Jones pasture to inspect the land he thought he was buying. He saw the supposed land in use by Jones, and inclosed in the Jones pasture. Yet he made no inquiry of Jones as to the nature of the latter's claim thereto. It is well settled in our state that no circumstance should more strongly excite one's suspicion than to find some one else in possession of land you are claiming. We know of no stronger case along this line than that of Collum v. Sanger Brothers, 98 Tex. 162, 82 S. W. 459. We quote most significant language of Chief Justice Gaines in that case, as follows:

"We think it a safe and salutary rule to require of a prospective purchaser of land to ascertain whether any other be in occupancy of it; and if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and it seems to us that common prudence and common honesty demand this course. If so, the possession should be notice to him, and if notice to a purchaser, it is a notice to a creditor."

This rule has been followed in Texas at all times, as well as in other states and in the federal courts. In this connection we quote as follows from the application for writ of error:

"Actual knowledge of the fraud is not required; reasonable prudence must be exercised to discover the fraud, and knowledge of acts sufficient to put one upon inquiry will operate as notice of the fraud. Kuhlman v. Baker, 50 Tex. 630; Bass v. James, 83 Tex. 110, 18 S. W. 336; Powell v. March (Tex. Civ. App.) 169 S. W. 936.

"In other words, 'constructive notice of the fraud may constitute a discovery,' 25 Cyc. p. 1186, with citation of authorities. Black v. Black, 64 Kan. 689, 68 P. 662; Standford v. Finks, 45 Tex. Civ. App. 30, 99 S. W. 449; Smith v. Talbot, 18 Tex. 774; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48.

"A party seeking to avoid the bar of the statute on the ground of fraud must aver and show that he has used due diligence to detect it, and that, if he had the means of discovery within his power, he will be held to have known it. Wood v. Carpenter, 101 U. S. 135–141 (25 L. Ed. 807).

"The presumption is that, if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, then he seasonably had knowledge of it. Wood v. Carpenter, 101 U. S. 135–143 (25 L. Ed. 807); Bass v. James, 83 Tex. 110, 18 S. W. 336.

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led. Wood v. Carpenter, supra.

"Possession is universally regarded as notice, 'because it is incumbent on one who is about to purchase real estate to ascertain by whom and in what right it is held or enjoyed; and a neglect of this duty is one of the defaults which, unexplained, is equivalent to notice.' Simmons Creek Coal Co. v. Doran, 142 U. S. 417–442, 12 S. Ct. 239, 247 (35 L. Ed. 1063).

"It is the duty of owners of land to watch their property, and, if one is found in possession, the natural inquiry is as to the authority under which he has taken possession. Houston Oil Co. v. Village Mills Co. (Tex. Com. App.) 241 S. W. 122–135.

"Possession is held to be notice because it is a fact which the party must know and which puts him upon inquiry concerning the claim of the person holding possession. Ramirez v. Smith, 94 Tex. 190, 59 S. W. 258.

"Every person dealing with land must take notice of an actual, open and exclusive possession. Land Co. v. Blalock, 76 Tex. 89, 13 S. W. 12.

" 'Possession of land is obvious to the senses and is evidence of title,' and, therefore, any one exercising ordinary diligence will not fail to notice it. King v. Paulk, 85 Ala. 186, 4 So. 825.

"On the point that Jones' possession was evidence of title sufficient to prove title in a court of justice, and, therefore, sufficient to affect appellee with notice of title. Menefee v. Colley (Tex. Civ. App.) 200 S. W. 182, and cases cited; Randell v. Robinson (Tex. Civ. App.) 172 S. W. 735.

"The presumption is that the person in possession of land owns it or has some legal title to it. White v. White, 89 Ill. 460.

"Possession of land is evidence of title. Collum v. Sanger Bros., 98 Tex. 165, 82 S. W. 459.

"Open and peaceable possession and actual occupancy of land is generally held to be notice to all the world not only of the possession itself but of the right of possession. Uhl v. May, 5 Neb. 159. Hawley v. Bullock, 29 Tex. 223.

"Such possession operates as constructive notice to all the world of the existence of any right which the occupant has in the premises. Cornell v. Maltby, 165 N. Y. 557, 59 N. E. 291."

But the Court of Civil Appeals in the instant case seeks to avoid this well-established rule upon the ground that the owners of land in West Texas sometimes permit their land to be inclosed and used by others. We do not think this is any sufficient answer to the rule. It was the duty of Moore to see if Jones was using this land as his own and claiming it adversely, or whether he was using it at the pleasure of Carver, and merely in line with this so-called custom in West Texas. In other words, possession is prima facie evidence of ownership, and prudence demands that a prospective purchaser of land seek an explanation of such possession from the one in possession.

[4] But, even if it could be said that Moore did not owe it to himself to ask Jones about his possession before the trade was made, then it seems to us that an incident occurred later which necessarily put Moore upon inquiry. More than three years before suit was filed, Moore wrote Jones, and told him that his land was in the Jones pasture, and offered to sell or rent the land to Jones. Not hearing from the first letter, Moore wrote him three additional letters. Jones never replied to any of them. It is inconceivable to us how any ordinarily prudent man would have remained secure and inactive and let some one stay in possession of his land, when he could hear nothing from such a person. This silence on the part of Jones was most ominous. It was an ignoring by Jones of Moore's claim to any land in the Jones pasture. It seems to us that this should have excited the active suspicion of any one that something was wrong. We hold that it did put Moore upon inquiry. But he failed to exercise ordinary care, and did not make any effort to see if his land was in the Jones pasture. The fact is that his land was six miles from the Jones pasture. As Jones says, he did not answer the Moore letters because he did not have any of the latter's land in his pasture.

[5] So we hold, under all the Texas decisions, that, as a matter of law, Moore owed himself the duty, before buying the land, to ascertain the nature of Jones' possession, of which he had actual notice. We further hold that, if he did not owe himself that duty at that time, he certainly was put upon inquiry when Jones ignored his claim to this

land in four separate letters. This latter incident was more than three years before suit was filed. Therefore the suit was barred, because filed more than two years after the fraud, by the exercise of ordinary care, could have been discovered. See, also, Gordon v. Rhodes, 102 Tex. 300, 116 S. W. 40.

[6] In view of what we have already said, we think it unnecessary to discuss any further points raised in the application. However, since the writ was granted "on the first proposition under the sixth assignment in the application," we think it best to allude to that question. That assignment and proposition read as follows:

#### "Sixth Assignment of Error.

"The Court of Civil Appeals erred in holding that the lease by one Moore to Powell in 1920 of the land actually conveyed to Moore, and the subsequent possession and use of this land by Moore, through his tenant, did not constitute constructive notice of its location and of the fact that it was not in Jones' pasture."

#### "First Proposition.

"It appearing that Moore's testimony, and the undisputed testimony, showed that in January, 1920, Moore leased to one Powell the land actually conveyed to him, and that Moore then went into possession of this land, through his said tenant, he was thereby charged with constructive notice of the location of said land and of the fact that it was not in Jones' pasture."

As stated, Moore made a lease of the land as it was actually located, and not in Jones' pasture. This lease to Powell was executed in January, 1920, more than three years before he filed suit. His tenant went into possession of the tract Carver had actually and in fact deeded to Moore. Under all our decisions, possession of a tenant is the possession of the landlord. The latter is himself in possession. Therefore Moore had constructive notice of the exact location of the land so possessed by Powell. Along this line, Judge Rice of the Court of Civil Appeals at Austin wrote an interesting opinion in the case of Johnson v. Sullivan, 163 S. W. 1015. Writ of error was denied by our Supreme Court in that case.

Upon this point, counsel for Carver submit the following remarks:

"We respectfully submit that, when appellee, in January, 1920, leased to Powell the land actually conveyed to him, and when Powell, as appellee's tenant, went into possession of this land, appellee was then charged with constructive notice of the location of the land in his actual possession through tenant. Can appellee plead that he was ignorant of the location of this land when he leased it to a tenant and the tenant went into possession? The tenant's possession was appellee's possession. We submit that appellee thereupon was charged with notice of the location of the land and of the further fact that it was not in Jones' pasture."

Therefore, for the additional reason stated in the contention just discussed, the peremptory instruction should have been given in favor of Carver.

[7] We realize that our conclusion may not reach the justice of this case. If such be true, then it is to be regretted. Equities are frequently overridden by limitation statutes. But it is generally conceded that equity rewards the diligent, and not those who sleep at the switch. The exercise of any diligence by Moore would have discovered this fraud in much less than two years after it occurred. He waited nearly six years before he awoke. So, after all, he has no particular cause to complain because of the result we have reached.

[8] Our lawmakers have felt that the various statutes of limitation are based upon worthwhile reasons. But they are not enacted, primarily, to do equity. In other words, such statutes are more or less iron-bound rules of law.

For the reasons stated, or either of them, we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment rendered by the Supreme Court in favor of plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error.