## Tuberville v. The State.

---

### TUBERVILLE v. THE STATE.

Certain testimony held insufficient to authorize a verdict of guilty of incest.
An appeal lies from the refusal of the judge to grant a new trial in a criminal case.
Incest was not an offense punishable according to the common law, but according to the canon law.

Appeal from Walker. The appellant was indicted for the crime of incest with his own daughter, and found guilty. There was but one witness to support the charge. He testified that he overheard a conversation between the accused and his (accused's) wife, sometime in December, 1848, in which the accused said to his wife that she had stated that he *had been with Sarah.* She replied that she had said so, and asked [129] him if he had not been with her.

## Tuberville v. The State.

He said he had. She asked him what made him do so, and also said to him, "Did you not know you would ruin yourself, her. and your family." He replied he could not help it. This conversation took place at Huntsville, in the piazza of a public house, to which place the wife had brought the accused to make him give security to keep the peace. The witness further testified that the accused had, on the same day, denied to him that he had committed the offense with Sarah Tuberville; that there was great excitement against the accused; that his wife had sworn her life against him; and he could not get sureties; that he was anxious to reconcile his difficulties with his wife; and that it was whilst he was endeavoring to make such reconciliation that the witness heard the conversation above given. Witness heard nothing more about the charge; does not know in naming Sarah, Sarah Tuberville was meant. That there was a Sarah Smith that lived in the family of the accused, his wife's sister, and about thirty years of age. Sarah Tuberville was about fourteen years of age. Witness lived within a half mile of the accused; never heard anything about the charge before the conversation related. Accused had always been considered an honest, punctual, and an honorable man before this difficulty with his wife. The indictment was found at the Spring Term, 1819, at Huntsville.

The Judge instructed the jury that if the offense charged was proved to have been committed within twelve months before the indictment was found, it would be sufficient. A motion for a new trial was overruled.

*Sneed & Oldham*, for appellant, argued that the testimony was wholly insufficient to sustain the verdict.

II. Incest is not a common-law offense. (Anderson v. The Commonwealth, 5 Rand. R., 627; 4 Black. Com., 64.) Until the 1st day of January, 1849, there was no statute in force in this State against the offense charged in the indictment. The court therefore erred in charging the jury (in [**130**] spring of 1849) that it was sufficient if it was proved that the offense was committed within twelve months before the indictment was found.

LIPSCOMB, J. The appellant was indicted for the crime of incest with his own daughter, and found guilty. He appealed to this court, and asks a reversal of the judgment—

1st. Because the court below erred in overruling his motion for a new trial.

2d. The court erred in the charge to the jury.

The charge contained in the indictment was so shocking to the moral sense of every civilized being, so degrading and humiliating to human nature, reducing man from his boastful superiority of a moral, rational being to a level with the brutal creation, that our pride and respect for our species would not allow us to believe it possible to have been committed in this age and country, unless constrained to yield conviction on the most indisputable proof. Is the proof in this case of that character? In considering the whole structure of the evidence of the witness, I must unhesitatingly say that it is not; that it does not afford the slightest legal proof that our country has been degraded by the commission of so loathsome, so heartsickening an offense in our midst. The language supposed to have been evidence of the offense by no rule of construction known either to the jurist or to the common-sense use of words could sustain the charge. First, the improbability that this witness heard enough to disclose truly the subject of the conversation. If it related to the cause of the difficulty between the accused and his wife, it may have referred to a different charge. It might have referred to efforts on the part of the accused to prejudice his daughter against her mother and induce her to believe that the mother, and not the father, was to blame in the difficulty that had disturbed the harmony of the family. A single word not heard by the witness might materially have changed what he understood to be the purport of what he had heard. Suppose it had been, [**131**] "You have stated that I have been *talking* with

## Tuberville v. The State.

Sarah." The witness not hearing the word "talking," it would then have fallen on his ears as "I have been with Sarah," when in truth the conversation may have related to talking with Sarah. Again, if witness heard the words in proper connection, they may have referred to another person of whom the wife may have been jealous, and may have supposed that with such person the husband had been guilty of acts of infidelity to his marital obligations. It may, and probably did, refer to *another* Sarah. It is, however, useless to speculate on what was meant by the words testified to as passing between the husband and wife. Whether taken *in mitiori sensu* or in their ordinary acceptation as used in common parlance, they never could convey an imputation of the offense charged.

It is said, however, that although there may not have been any legal evidence to sustain the verdict of the jury, yet an appeal will not be entertained in this court from such a refusal to grant a new trial, for the want of jurisdiction. Whether the decision of a judge on a motion for a new trial can be revised in an appellate court or not is a question that has been variously decided. In some States it is considered as entirely addressed to the discretion of the judge, and that it is not competent for an appellate court to revise his decision, whether that discretion has been wisely exercised or not. Such is the rule in the Supreme Court of the United States, the same in the State of Alabama. It was so ruled in the last State, not long after the organization of the Supreme Court, in a criminal case; but its application has been to all cases, civil and criminal. The opinion of the court was expressly placed on the authority of the Supreme Court of the United States. (Phleming *v.* The State, Minor R., 43.) See Spence *v.* Tuggle, (10 Ala. R., 538.) by which it will be seen that the same doctrine is still held in the Supreme Court of that State. In Virginia a different rule prevails, sustained by a long train of decisions, from Washington's Reports down to the present time. The same doctrine is found to prevail in Tennessee—and the **[132]** decisions of the court of original jurisdiction have been again and again revised—and is not questioned. (Keller *v.* Bevans, Cook R., 89; Rayburn, Adm'r Harbour, 7 Yerg. R., 432; Pawley *v.* McGimpsey, Id., 502; Hawkins *v.* Carrol, Id., 505.) Same rule prevails in Kentucky. (Bagby *v.* Lewis, 2 Mon. R., 77, 78.) It will be seen that in New York a motion for a new trial is made in the Supreme Court; and it is there decided on a view of the evidence. They were decided in King's Bench by a reference to the evidence at *nisi prius.*

In South Carolina it is the constant practice of the appellate court to decide a motion for a new trial on an examination of the evidence; and it is a matter of right to ask a revision of the testimony on which the jury found the verdict. In this country it has been the uniform practice of the Supreme Court, from its organization after the Revolution, to revise the testimony on which the verdict was found, and for a long time to do so whether a motion for a new trial had been made in the court below or not. This was modified; and the court now refuse to do so unless a motion was made in the court *a quo* and overruled. (Foster & Foster *v.* Smith, 1 Tex. R., 70.)

I have so far discussed the doctrine on the subject of revising a decision of the judge in refusing to grant a new trial, without any regard to the distinction supposed to exist between civil and criminal cases; and I think it may safely be concluded that at this day by far the greater number of the appellate courts of the different States do exercise jurisdiction on the subject in some mode or other. In England it was not considered a matter of right to claim that the question whether the evidence supported the verdict should be referred; but if the judge at *nisi prius* thought proper, and did reserve the question, the judges passed upon the evidence and awarded a *venire de novo* or not, according to their opinion of the evidence; and this both in civil and criminal cases. In South Carolina any person dissatisfied with the evidence on which a verdict was found against him, whether in a civil or criminal case, could have it referred to the Supreme Court; and if, in **[133]** the opinion of the Supreme

## Tuberville v. The State.

Court, the verdict was not supported by the evidence, a new trial was granted. In the case of the State *v.* Anderson, (2 Bail. R., 565.) Judge Johnson, in delivering the opinion of the Supreme Court on a motion for a new trial, lays down the same rules that would govern the court on application for a new trial in a civil case; in fact. he refers to several cases of that character. He says that "where the judge is not satisfied with the finding of the jury, it is very seldom a new trial is refused." The offense charged in that case was capital, and the jury had found the accused guilty. One of the grounds assigned for error was that the verdict of the jury was contrary to evidence and to the opinion of the judge; and it was on this assignment the motion was granted and a new trial awarded. Many cases might be cited to show that no distinction is made, on a motion for a new trial, between civil and criminal cases. In the case of The State *v.* Fisher, (2 N. & McC. R., 261,) it is said that unless a verdict is clearly and manifestly against evidence or wholly without evidence, the court will not set it aside on that ground. In The State *v.* Kane, (1 McC. R., 482,) it was ruled that it is very much doubted whether a person ought ever to be convicted of a felony on the uncorroborated testimony of a prosecutor who claims the property in question. Where the defendant sets up a title in himself, and where the transaction is attended with none of the usual concomitant circumstances of larceny, as concealment, &c., the court, upon conviction, will grant a new trial. Where there was a conviction of larceny on the oath of only one witness, and the testimony was shaken by circumstances, it was set aside and a new trial granted. (1 Mc. R., 29.) I think it may be safely said that wherever the appellate court will take jurisdiction and decide the question whether the verdict is sufficient under the evidence, and that court has appellate jurisdiction of criminal cases, civil and criminal cases are put on the same footing. In Alabama, although, as it has been seen, an appeal or writ of error will not be sustained on the refusal of the judge to grant a new trial, yet it is the constant practice on the circuit, in all criminal cases, to hear a motion to set aside a verdict and grant a new trial because the verdict is against evidence or unsupported by evidence; and such verdicts have often been set aside.

I have so far examined the practice of other courts on this subject. But independent, however, of all authority, it would seem that under a fair construction of our own Constitution and act of the Legislature, this jurisdiction could be fairly claimed. The jurisdiction of this court will be found defined in the 4th article of the Constitution, under the head of JUDICIAL DEPARTMENT, section 3: "The Supreme Court shall have appellate jurisdiction only, which shall be co-extensive within the limits of the State; but in criminal cases and in appeals from interlocutory judgments, with such exceptions and under such regulations as the Legislature shall make." The Legislature of the State, at its first session under the Constitution, passed an act regulating appeals to the Supreme Court in criminal cases.

Section 1 provides "that the defendant to any indictment or prosecution for any criminal offense in the District Courts of the State shall have the right of appeal to the Supreme Court, except in cases of contempt of court.

"Sec. 2. That on the trial of any indictment or prosecution for any criminal offense included within the provisions of the first section of this act, the defendant, by himself or counsel, may file his bill of exceptions to any decision, opinion, order, or charge of the court before which he is tried; and it shall be the duty of the judge of the said court to sign said bill of exceptions in the same manner and under the same regulations as in civil cases, in order that such opinion, decision, order, or charge may be revised upon appeal to the Supreme Court herein provided."

Section 3 provides "that it shall be the duty of the clerk to send up a full and perfect transcript of all the proceedings had in such case."

In the absence of all precedent, I believe that under the [135] authority

67

## Tuberville v. The State.

here given by the Constitution and the act of the Legislature, we can find authority to revise the decision of the District Court on a motion for a new trial; and such must have been the authority intended to be conferred; else why so minute in defining decision, opinion, order, or charge? Why direct a full and complete transcript of the proceedings, if every act of the court was not to be subjected to revision as in civil cases? There is no reason for less vigilance in guarding the life, liberty, and reputation of the citizen than is extended to his smallest pecuniary interests. We believe a new trial ought to have been granted.

On the trial the court charged the jury that if the offense charged was proved to have been committed within twelve months before the commencement of the prosecution, it would sustain the indictment. This charge was excepted to by the counsel for the accused, and the exception overruled; and it is now assigned for error. It is probable that the judge, in giving his charge to the jury, had reference to the limitation of prosecution for offenses contained in the 45th section of an act for punishing crimes and misdemeanors, passed by the Congress of Texas, 21st December, 1836, by which prosecution for all offenses except murder, arson, forgery, counterfeiting, and larceny must be within twelve months from the commission of the offense; and to the 54th section of the same act, by which it is enacted: "All offenses known to the common law of England, as now understood and practiced, which are not provided for in this act, shall be punished in the same manner as known to said common law." If the charge of the court can be sustained, it must be by the section cited. The crime of incest is not embraced distinctly in the act of 1836, nor is it named but once, and then only to designate marriages within the prohibited degrees as incest; and it will be found in the 35th section of the same act, the section, after enumerating the degrees of relationship within which it should not be lawful to marry, concludes: "Whoever shall commit any offense mentioned in this section shall be deemed guilty of incest, and on conviction thereof [**136**] shall be fined in a sum not exceeding one thousand dollars and shall be imprisoned not exceeding two years, at the discretion of the court." It is believed that we have had no act of the Congress of Texas or State Legislature making incest an indictable offense prior to the act of the Legislature of 1848, which did not take effect until the 1st of January, 1849, unless the offense can be brought within the 54th section of the act of 1836, above cited. If so, the charge would be proper, and proof of its being committed within twelve months before the date of the indictment would be sufficient. If not, it is erroneous; because it can claim no support from the act of 1848, because that act did not take effect until a period of time only three months before the commencement of the prosecution, which was in March, 1849. If the offense against decency and morality called incest was known to the common law and punishable, the indictment would be good under the 54th section of the act of 1836. The inquiry is, then, was it an offense at common law?

Blackstone, in the 4th volume of his Commentaries, makes the following remarks: "In the year 1650, when the ruling powers found it for their interest to put on the semblance of very extraordinary strictness and purity of morals, not only *incest* and willful adultery were made capital crimes, but also the repeated act of keeping a brothel or committing fornication were (upon a second conviction) made felony without benefit of clergy. But at the restoration, when men, from an abhorrence of the hypocrisy of the late times, fell into a contrary extreme of licentiousness, it was not thought proper to renew a law of such unfashionable rigor. And these offenses have been ever since left to the feeble coercion of the spiritual court, according to the rules of the canon law." Hence we may conclude that at common law it was no offense, and that it was only punishable by the temporal courts during the time of the commonwealth under the Protector; that at the restoration it was returned to the ecclesiastical jurisdiction. There is no doubt, however, that many offenses of private incontinence, known to the spiritual courts, might be punished

by the temporal courts; but it would only be when by open and habitual indulgence that it would become public scandal and be punishable as open lewdness. The charge of the judge was erroneous, as the offense charged was not punishable unless committed after the 1st of January, 1849. For this error the judgment of the court below must be reversed and the cause remanded.

Judgment reversed.