A. TAYLOR AND WIFE v. JAMES MURPHY.

1. MILITARY SUPREME COURT NOT AUTHORITY. — Chief Justice Moore does not regard the opinions of the courts organized by the military authority under the reconstruction laws as authoritative expositions of the law, but only as conclusive of the cases between the parties.

2. NOT AUTHORITY.— Roundtree *v.* Thomas, 32 Texas, 286, declared not authority.

2. ANTE-NUPTIAL DEBTS OF WIFE—COMMUNITY PROPERTY.—Community property is liable to execution for the debts of the wife contracted before marriage.

4. STATUTE CONSTRUED.— Paschal's Digest, arts. 4641, 4642, discussed and construed.

ERROR from Harrison.    Tried below before the Hon. A. J. Booty.

This suit was instituted in the District Court of Harrison county on a note given by Adaline Roberts, when a *feme-sole*, for the purchase-money of a lot of land. Before the institution of this suit she married A. Taylor. Defendants pleaded failure of consideration; that they had been sued in the Federal Court at Tyler, Texas, by H. Gilliam *et al.*, and were about to be evicted from the land. On the 18th of October, 1876, the cause came on for trial. Plaintiffs took judgment on an *ex-parte* trial. Although the judgment is entered as if defendants appeared at the trial, the peculiar wording of the judgment would indicate that they did not appear. The judgment was for amount of note sued on; that the land be sold; and that if any balance remained due after the sale of the land that execution issue against the separate property of Adaline Taylor, or any community property of Adaline Taylor and her husband, A. Taylor, sufficient to satisfy the amount so remaining due. No execution was to be levied upon the separate property of the husband.

The defendants, by writ of error, ask a reversal of the decree, assigning as error the judgment allowing community property to be levied on to satisfy the judgment.

*Myron B. Geer,* for plaintiff in error.— It is assigned for error that the court erred in the rendition of the judgment, and in ordering execution against the community property of A. Taylor and his wife for a debt made by the wife when a *feme-sole.*

Paschal's Digest, art. 4642, declares what is community

property, and for what debts it shall be taken in satisfaction of. At common law the husband was responsible for the debts of his wife contracted before marriage, for the reason that all property owned by her before marriage became his. There was no separate property of the wife known at common law. In this State the husband or wife can own and hold separate property; (Paschal's Dig., art. 4641;) but for the recovery of debts contracted by the wife before the marriage the husband is not liable. He must be joined *pro forma* when the wife is sued for a debt so contracted. Judgment is rendered against both, but execution must be levied on and made exclusively out of the separate property of the wife. (6 Tex., 236; 4 Tex., 61; 5 Tex., 290; 32 Tex., 288.)

The judgment of the District Court is error for which this case must be reversed and remanded. It may be insisted by the defendants in error that this judgment ought to be reformed, and the judgment rendered in this court that should have been rendered below. Paschal's Digest, art. 1562, says: " When the judgment or decree of the court below, in civil cases, shall be revised, the Supreme Court shall proceed to render such judgment or decree as the court below should have rendered or pronounced, except when it may be necessary that some fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain; in either of which cases, the cause or prosecution, as the case may be, shall be remanded for a more definite decision." Under the pleas made by the defendants in the court below, the facts of failure of title and consideration of the note given by Adaline Roberts were in question; and under the law referred to and the decisions thereon, (27 Tex., 241; 19 Tex., 269; 24 Tex., 209, 461,) this cause must be remanded; for this court cannot know but what plaintiffs in error have, since the 18th of October, 1876, the day of the trial in this case, been evicted by the suit of Gilliam and others, which would give them a good and valid defense against the note sued on. There are questions of fact in this case, as pleaded by defendants

below, that are not admitted, and this court cannot regard them as admitted, and which will have to be inquired of below.

*Turner & Lipscomb*, for defendant in error.—Two questions are raised by the assignments of error in this cause:

First. Where a judgment is rendered against the husband and wife on a note executed by the wife before marriage, is it error to award execution, after exhausting the separate property of the wife, against the community property of the husband and wife?

This, we maintain, is yet an open question, and has never been directly before this court. (Nash *v.* George, 6 Tex., 237; Roundtree *v.* Thomas, 32 Tex., 288.)

The second question may be stated in about this form: Where a judgment is rendered on a note executed by the wife before marriage, with decree to foreclose lien upon property described in the note, and in the event the proceeds of the sale of property shall not be sufficient to pay the judgment, execution is awarded against the separate property of the wife, and if no such property is to be found then execution is awarded against the community property of the husband and wife; and if this court should be of opinion that it was error to award execution against the community property, and should reverse the judgment, will the cause be remanded, or will this court not proceed to render such judgment as the lower court should have rendered, enough appearing in the record to show what would have been the proper judgment?

In our written argument we have called attention to what appears in the record, to which we refer the court, and, in support of our view, to the following authorities: Paschal's Dig., sec. 1562; Sayles' Prac., sec. 754; Harrell *v.* De Normandie, 26 Tex., 126; Sims *v.* Redding, 20 Tex., 388; Taul *v.* Bradford, 20 Tex., 264; Wortham *v.* Harrison, 8 Tex., 141; McNairy *v.* Castleberry, 6 Tex., 286; Jewett *v.* Thompson, 8

Tex., 437; Johnson v. McKissack, 20 Tex., 161; Mathews v. Hancock, 20 Tex., 6; Echols v. Dodd, 20 Tex., 190; McKinney v. O'Connor, 26 Tex., 5.

MOORE, CHIEF JUSTICE.—The question to be determined in this case is whether community property may be taken in execution in satisfaction for debts of the wife contracted before marriage. This question, so far as I am aware, has never been authoritatively determined by this court. It has on one or two occasions been adverted to by the court, but in no case to which my attention has been called has it been so directly involved as seemingly, in the opinion of the court, to require or perhaps justify more than the incidental references to it which have been made. I may be told that it is distinctly presented and may be regarded as properly involved in the judgment which should have been rendered on the facts exhibited by the record in the case of Roundtree v. Thomas, 32 Tex., 286, and also in Nash v. George, 6 Tex., 234.

In reply, I have to say, in regard to the first of these cases, that, in my individual opinion, the court by which that case was decided did not exercise its functions under and by virtue of the Constitution and laws of the State of Texas, but merely by virtue of military appointment. And while I am as far as any one from desiring to bring in question the validity of its acts in adjudicating the cases which were disposed of by it, or from detracting from the respect properly due to its opinions, by reason of ability and legal learning of the eminent gentlemen who constituted the court, and who were no doubt selected on this account to discharge the important duties intrusted to them by the general under whose direct control all the functions of government with us were then conducted, nevertheless I cannot regard the opinion of this tribunal as authoritative exposition of the law involved in the cases upon which it was called to pass, but merely as conclusive and binding determinations of the particular case in which such opinion was expressed.

But if this case is entitled to the same consideration as it should have if made by our predecessors, it would, I think, be entitled to but little weight in determining the question here presented to us. Suit was brought for the separate debt of the wife, and the court below gave a general judgment against husband and wife. This was held to be error. In reaching this conclusion, the judge by whom the opinion of the court is pronounced says: "Although the judgment is proper enough against the husband and wife because of his (the husband's) marital custody, yet it ought to be specifically ordered in it that the execution which issues thereon is to be levied upon the separate property of the wife in his possession or under his control. Every judgment of this character ought always to be so modified." But the right of a creditor (which is the case now before us) who claims to have satisfaction of his judgment against the wife out of community property because of her interest in it, is not in the slightest manner adverted to; nor is the conclusion reached supported by argument or reference to authority. Its correctness seems to be rested upon the assumption that "it is certainly the law of this State that the husband cannot be made liable for the debts of the wife contracted before marriage." That this proposition has been more than once announced by the court, cannot be denied; but that it has been so decided, if the point is critically examined, is by no means so certain. The cases to which reference is made in support of this assertion by counsel—none are referred to by the court—are Callahan *v.* Patterson, 4 Tex., 64; Howard *v.* North, 5 Tex., 290; Nash *v.* George, 6 Tex., 236; and Booth *v.* Cotton, 13 Tex., 364. It may not be amiss to look into these cases and see what was involved in them, as we will thereby be the better able to determine whether they call for and actually decide the proposition in support of which they are cited in the broad and unqualified terms in which it is announced.

The case of Callahan *v.* Patterson was a suit against the surviving husband and his son, as heir of his deceased

mother, for specific performance of a contract of the husband and wife for the sale of a tract of land the separate property of the wife. It is quite apparent from the character of the suit that it could in no way have involved the question presented in this case, or authorized its decision by the court. The mere fact that a part of the money which the purchaser paid for the land was applied to the discharge of a debt contracted before her marriage, certainly neither invited its discussion nor called for its decision. Nor can it be justly inferred that the court, even in a dicta, announced any such proposition. It may be that the court supposed this to be the law; but if so, it is only to be inferred from the general proposition announced in the opinion, "that the separate property of the wife is liable for her debts contracted before marriage." Now, it is evident that while the fact that the wife's property does not with us pass to or vest in the husband on marriage, but is secured to her, subject to the payment of her debts before marriage, during coverture, may, and no doubt should, have great weight in determining whether or not the husband is liable for her debts here as at common law, it can by no means be regarded as deciding that he is not.

Howard v. North, 5 Tex., 290, was an action of trespass to try title to recover land claimed by defendants as the separate property of the wife. The question in the case, so far as it need be here referred to, was whether the separate estate of the wife could be sold under an execution on a general judgment against husband and wife for damages by reason of fraudulent representations in the sale of land belonging to the wife. The objection to the sheriff's deed on the ground of the supposed unauthorized character of the judgment was held to be untenable, because the objection could not be taken to it in a collateral action. This, of course, was decisive of the point, and was all that need have been said. Although the question before the court was thus conclusively disposed of, the learned Chief Justice Hemphill, who pro-

nounced the opinion, was led by the argument of counsel into a general disquisition regarding the property rights of husband and wife and their liability for ante-nuptial debts of the wife at common law and under our statutes, and, among other things, says:

"But the principles of the common law, especially where unmodified by equity, furnish no rule for the determination of the quantity or quality of the interest of the husband in the separate property of the wife as fixed by law in this State. The common law knew nothing of separate property in the wife. Its origin is attributable to equity, and its recognition was a great innovation on that 'immemorial policy' of the law which merged, by force of coverture, the separate existence and capacities of the wife in the husband. The right of the wife to hold all her property in her separate right is recognized by the law of this State. Her goods and chattels are not vested by marriage in the husband, nor is he entitled to a freehold estate in her realty; and all the rules of law founded upon such title in her property are inoperative under a system by which such rights are wholly repudiated. He has by law the management of the estate of the wife and the incidents essential to the due exercise of such authority, not for his own benefit, but for that of the community or of the estate which he controls."

The conclusion of the court is obviously correct, and is deduced from our statutes defining marital rights and limitations thereby imposed on the common-law rights of the husband in respect of the wife's property: that the husband has no interest in her separate estate which can be sold in satisfaction of his debts, But "where judgment is recovered against the husband and wife jointly, without any specific directions in the decree as to the estate out of which it is to be satisfied, it would seem from the opinion of the court in this case that, as a general rule, it may be levied upon and satisfied out of the property of either the husband or wife or out of the community."

The case of Nash *v.* George, 6 Tex., 234, was a suit, like this, against husband and wife on the note of the wife given before marriage. Judgment " was entered in favor of the plaintiff, with specific direction that the execution should be levied and made exclusively of the separate goods and estates of the wife. The only question in the case was, whether the action of the court in overruling a general demurrer of the defendants to the plaintiff's petition was correct. In the opinion affirming the judgment, we find, for the first time, a distinct announcement of the proposition reiterated in Roundtree *v.* Thomas, which, it is insisted by appellant, should lead to a reversal of the judgment in this case. The court says: "That the husband is not liable for the debts of the wife contracted before marriage, was held in several cases decided at the last term at Austin—Callahan *v.* Patterson and Howard *v.* North." That the learned judge was mistaken when he states that this question was decided in either of these cases, has been made, we think, quite obvious; and that the announcement of this proposition in this case must be regarded merely as a dicta, is clearly shown by what is said in immediate connection with it. The opinion continues: " Nor is he made liable by this judgment. It can be enforced only against the wife's individual property. It does not lie with the appellants to complain of the judgment, at least upon the ground that it involves the husband in any responsibility; for this is not the case."

Booth *v.* Cotton, 13 Tex., 364, was a suit against husband and wife for $300 alleged to be due plaintiff " for collecting, keeping, managing, and preserving the separate property of the wife." Evidently it could involve no question as to the liability of the husband for the ante-nuptial debts of the wife.

The examination of these cases shows, as we think, beyond all question, that the court did not, as before said, authoritatively decide in either of them " that the husband is not liable for the debts of the wife contracted before marriage," at least

in the broad and unqualified sense in which the proposition
has been stated.    That it did not intend, in announcing this
general proposition, to. deny the liability of the community
property for the payment of such debts, is certainly beyond
all question when we look at what is said by Judge Hemp-
hill in Howard *v.* North, and especially in Nash *v.* George.  The
court evidently intended, as we think, merely to deny the per-
sonal and unqualified liability of the husband for the ante-
nuptial debts of the wife.    The chief ground of the common-
law liability of the husband for such debts seems to be sup-
posed by the court, in the cases referred to, to be that by mar-
riage the husband acquires all of the wife's personal property
and a freehold estate in her lands, as well as the absolute
right to all that she may earn during the marriage.    That the
difference between the common law and our statutes defin-
ing marital rights may and should be held to operate a cor-
responding change in the husband's responsibilities, we have
no hesitancy in admitting.    But, we may ask, should the
common law be held to be repealed, by this mere-implica-
tion, to any greater extent than the husband has been de-
prived by the statutes of the property of the wife and pro-
ceeds of her labor, to which he would otherwise have had, to
meet the liabilities and burdens imposed upon him by the
common law?    It is a principle of law as well as of morals
that we should labor to discharge all of our just liabilities,
and that our creditors are entitled to have the proceeds of
our labor applied to their payment, subject to such reasonable
restrictions as may be imposed by law for the good of society.
At common law, though the wife has no property the hus-
band becomes immediately liable for her debts, because he
is entitled to all that she may earn during the marriage.
Now, with us the wife is supposed to be an equal contributor
to the community estate.    At least the revenues and profits
derived from her separate estate, as well as whatever she
may acquire by her industry and labor during coverture,
become a part of it, and are subject to the uncontrolled pos-

session and disposal of the husband. Is it unreasonable, then, to hold that he is liable for the ante-nuptial debts of the wife to the extent of the community estate in his hands? And if the third section of the act of the 13th of March, 1848, for "better defining the marital rights of parties," must be construed as limiting the liability of the community estate "for debts of the husband and for the debts of the wife contracted during the marriage for necessaries," (Paschal's Dig., art. 4642,) then it should also be held that the ante-nuptial debts of the wife must be regarded, by the principles of common law, as modified by our statutes, as heretofore indicated, after the wife's separate property has been exhausted, to be debts of the husband.

We think it proper, also, to say that the conclusion sought to be maintained by a literal interpretation of a mere clause of a sentence is altogether fallacious. Taking into view the entire statute, it seems obvious that the husband and wife have equal rights in respect to their separate property as well as to the community estate, except that the custody and management of the wife's separate property, as well as the absolute control and disposal of all the community property, are intrusted to the husband. The second section of this statute declares what shall constitute the separate estate of husband and wife, and gives the custody of that of the wife to the husband during the marriage. The purpose and aim of the third section was to define what property should be common to both husband and wife; and here, again, the provision respecting its ultimate disposition on the dissolution of the marriage clearly shows that their interest is precisely the same. In contemplation of law, the community estate is the result of their joint and equal contributions. Its management and disposal during the marriage are given to the husband, not on the ground of any greater interest of his in it, but merely for reasons of public policy and social economy. That parties dealing or contracting with the members of the community might know the extent of their power

and authority to bind their community property, it is provided that it should "be liable for all debts of the husband and for the debts of the wife contracted during the marriage for necessaries." In other words, the husband's authority to bind the community is general and unlimited; the wife's, special and limited. The construction sought to be given to this clause of the section would violate the spirit and intention of equality between the spouses plainly manifest throughout this entire act, as well as all of our statutes relating to marital rights. The husband's ante-nuptial debts would be a charge upon and could be paid out of the community estate; while the wife would have to discharge hers, if she had no separate estate, out of her half of its remainder, if she should survive the husband. It would also operate most oppressively to creditors of the wife; for while it would give the husband the income and profits of her separate property, as well as all that she might acquire by her labor and industry, the creditors, after her separate property was exhausted, would be precluded from the collection of their debts, though the wife's interest in the community might be amply sufficient for their discharge. We do not think that this was either the spirit or the object of the law, or that a fair construction of it will lead to such a result.

The judgment is affirmed.

　　　　　　　　　　　　　　　　　AFFIRMED.