ROBERTSON v. TALMADGE et al.
(No. 719.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 13, 1915. Rehearing Denied March 6, 1915.)

1. TRESPASS TO TRY TITLE ⬮➾40—EVIDENCE—UNSIGNED COPY OF REPORT OF COMMISSIONERS TO PARTITION — ADMISSIBILITY — "DECREE."

A certified copy of an unsigned report of commissioners to partition a tract, forming a part of the record of the case, and showing a partition between the heirs of the deceased owner, is admissible, in connection with other evidence in trespass to try title between the heirs, to show a partition, though the report is not a "decree" which is a declaration of the court announcing the legal consequences of the facts found.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. ⬮➾40.

For other definitions, see Words and Phrases, First and Second Series, Decree.]

2. EVIDENCE ⬮➾372—ARCHIVES OF LAND OFFICE—ANCIENT DOCUMENTS.

A letter addressed to the Commissioner of the General Land Office and forming a part of the records of the Land Office is admissible as an archive of the Land Office when more than 30 years old.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. ⬮➾372.]

3. EVIDENCE ⬮➾382—ARCHIVES OF LAND OFFICE—ANCIENT DOCUMENTS.

Whether a letter offered in evidence as an archive of the General Land Office was a forgery held under the evidence for the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1658, 1659; Dec. Dig. ⬮➾382.]

4. EVIDENCE ⬮➾474—GENUINENESS OF HANDWRITING.

A witness who testified that he had known a county clerk of a county for many years and knew his handwriting, having frequently seen him write, could testify that he had made an examination of a signature purporting to be that of the county clerk found among the papers in the General Land Office and that in his opinion the signature was not genuine, as against the objection that the testimony referred to a document not produced in court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2196–2219; Dec. Dig. ⬮➾474.]

5. COURTS ⬮➾89—CONTROLLING DECISIONS—COURTS OF TEXAS—MILITARY COURTS.

A decision of a military court in Texas existing under reconstruction laws is not binding authority.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. ⬮➾89.]

6. EVIDENCE ⬮➾197 — HANDWRITING—GENUINENESS—PROOF OF COMPARISON.

A signature cannot be proved by comparison when the signature is not before the court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 681, 681½; Dec. Dig. ⬮➾197.]

7. EVIDENCE ⬮➾564 — HANDWRITING—GENUINENESS—PROOF OF COMPARISON.

Persons who are experts on the question of handwriting may not testify to the genuineness of a signature of an officer to papers submitted to them for comparison with signatures on other papers not filed in the case and their genuineness being denied.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2385–2389; Dec. Dig. ⬮➾564.]

8. TRESPASS TO TRY TITLE ⬮➾39—EVIDENCE—ADMISSIBILITY.

Where in trespass to try title defendant relied on partition, whereby plaintiff obtained a part of the land of the deceased ancestor of the parties, evidence that the land alleged to have been allotted to plaintiff was absorbed by conflict with another league grant was admissible as against the objection that it was improper to show conflict without field notes, and that the testimony was irrelevant and immaterial.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 54; Dec. Dig. ⬮➾39.]

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by Sterling C. Robertson against Clara A. Talmadge and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Bean & Klett, of Lubbock, for appellant. Ferguson & Puckett, of Lubbock, for appellees.

HALL, J. The appellant instituted this suit in trespass to try title in the district court of Lubbock county, September, 1912, to recover an undivided one-fifth interest in two tracts of land described in the petition. The appellees Mollie E. Wright, Milton A. Wright, and Lou Addie Wright, filed pleas of not guilty and asserting title in themselves sought to remove the cloud of appellant's claim from their lands. Appellee Mrs. Talmadge made no defense. The court directed a verdict, and judgment was duly entered, from which this appeal is prosecuted.

In 1841, a headright certificate was issued to James R. Robertson, for a league and labor of land. Some time during the year 1847, approximately 4,043 acres of this certificate was located in Robertson county, in two contiguous surveys, and the remainder of the certificate was located in 1850. In June, 1878, an unlocated balance certificate was issued for 1,892 acres, which was located in Lubbock county and patented to James R. Robertson. The 830 acres in controversy is part of the Lubbock county location. It is admitted that appellant is one of the five heirs of James R. Robertson, the patentee of the Lubbock county land. The appellees Wright and Talmadge hold conveyances from all the heirs except appellant to the land in controversy. James R. Robertson and his wife having died, it is claimed that there was a partition of the land between the five heirs. The defendants introduced in evidence as part of the deposition of J. H. Walker, chief clerk of the land office, certified copies of the following letters from the land office:

"Salado, Bell County, Tex., September 22, '76.

"Hon. Jacob Gross, Commissioner G. L. O.— Dear Sir: This is to request that you do not allow the headright certificate of James R. Robertson for one league located in Robertson county, in conflict with the George Antonio Nixon 11 League grant. to be lifted for relocation by anyone without my consent as one of

the heirs and owners of said league of land, as I wish it to remain where it is.

"Yours respt.,    S. C. Robertson."

"January, 1, 1878.

"To the Hon. J. J. Gross, Commissioner of the General Land Office of the State of Texas—Dear Sir: I hereby consent that the headright certificate of James R. Robertson, located on the 11-league grant of George Antonio Nixon, in Robertson county, Texas, may be withdrawn from the General Land Office, except that portion of it which covers 808¼ acres of land that was apportioned to me as one of the heirs of James R. Robertson, deceased, and one tract that was purchased by me and one purchased by my father, E. S. C. Robertson, that belong to the estate of F. D. Robertson, deceased, as will more fully appear by reference to the accompanying plan and field notes of partition of said league, among the heirs of James R. Robertson, and the deeds of conveyance, that is to say:

Tract No. 1, F. D. R.........111    acres
  "   "   3, S. C. R.........115    acres
  "   "   7, S. C. R.........161¼  acres
  "   "  15, S. C. R.........321    acres
          S. C. R.........100    acres
                        _____
                        808¼ acres

"I have no objection to any disposition the heirs and owners of said certificate may desire to make of the remainder of the certificate after deducting the about mentioned 808¼ acres, which I protest against being lifted or moved from the above mentioned tracts.

"Yours respectfully,
"Sterling C. Robertson,
"By E. Sterling C. Robertson.
"E. Sterling C. Robertson.
"Approved."

This letter is designated in the statement of facts as "Exhibit E," and attached to it as part of the deposition and exhibit are what appear to be copies of field notes of the subdivisions of two James R. Robertson surveys, together with a copy of what appears to be the report of the commissioners to partition the headright league belonging to the estate of James R. Robertson; also, copies of certain administrator's deeds and a plot of such subdivisions. It appears that the instruments designated as Exhibit E have been in the land office ever since they were filed there in 1878. Prior to filing these instruments in the General Land Office, appellant conveyed a portion of the land described in the exhibits as having been partitioned to him, and in 1884, six years after the filing of these papers in the land office, he conveyed another portion of the 808¼ acres. The record does not show whether or not he owns the remainder of the 808¼ acres.

The first assignment of error is that the court erred in admitting that part of Exhibit E attached to the deposition of Chief Clerk Walker, designated as "a certified copy of the field notes and unsigned report of partition filed with the county clerk of Robertson county."

The record shows that there is attached to this unsigned report of partition the following certificate:

"The State of Texas, County of Robertson.

"I, Phalielo W. Hall, clerk of the county court aforesaid, do certify that the foregoing instrument in writing is a correct copy and true of the field notes of the different surveys and decree of partition of the estate of James R. Robertson, deceased, as the same appear from the original papers in said succession, on file in my office.

"Given under my hand and seal of office at Owensville, this the 6th day of May, 1869.

"P. W. Hall, Clerk C. C. R. C."

On the back of this instrument was a plat, subdividing the land. The subdivisions were numbered from 1 to 15. Nos. 3, 7, and 15, the initials S. C. R. written in them; the remaining subdivisions each having the initials of one of the other heirs.

Under this assignment the proposition is urged that an instrument on file in the clerk's office, purporting to be a report of commissioners which has not been signed, nor approved by the court, does not constitute a decree of partition. As stated above, the certified copy from the General Land Office showing this instrument was a part of Exhibit E, and attached to the letter of January 1, 1878.

The point raised by this proposition is not one of admissibility, but it questions the effect of the unsigned report of the commissioners. The instrument which appellees claim is a decree and which appellants designate as "an unsigned report of the Commissioners" is in part as follows:

"The State of Texas, Robertson County.
"In the County Court of said County.
"In the Succession of James R. Robertson, Deceased.

"To the Honorable J. B. Ellison, County Judge:

"The undersigned duly appointed and legally authorized commissioners, appointed by your honorable court to partition and divide the headright league of land belonging to the estate of James R. Robertson, deceased, among the heirs of said Robertson, and to pay expense of administration pursuant to the right of partition directed to us, concerning the laws in accordance with the accompanying decree of your honorable court accompanying said writ, proceeded to partition and divide the aforesaid league of land in the following manner, as shown by the plot hereto attached, that is to say: To H. H. Robertson we set apart that tract of land described in the field notes hereto attached," etc.

The instrument then in detail giving the field notes of each tract allots to each of the heirs certain tracts according to the numbers as shown on the plot, and to appellant the tracts as stated in his letter of January 1, 1878, setting aside 500 acres of the tract for the purpose of paying "costs of court and expenses of administration as directed in your decree above," and closes as follows:

"And we, the undersigned commissioners, show that the above and foregoing partition made by us, by virtue of said writ, issued from the honorable county court of Robertson county, directed to us, in accordance with the decree of said court accompanying said writ, is a fair, just and impartial partition of said league of land among the heirs of said deceased and for paying the expenses of administration

and costs of court, to the best of our skill and ability. In testimony whereof we have hereto signed our names this the 14th day of January, A. D. 1868."

[1] This instrument is certainly not a decree, notwithstanding the statement in the certificate of County Clerk Hall to that effect. It does not purport to be and cannot be construed as "the declaration of the court announcing the legal consequences of the facts found." Trammell v. Rosen (Sup.) 157 S. W. 1161. It is simply an unsigned copy of a paper which might have at one time been filed among the papers of the cause. Teague v. Swasey, 46 Tex. Civ. App. 151, 102 S. W. 458. We do not want to be understood as holding that it was inadmissible for any purpose. We think it was admissible in connection with other evidence tending to show a partition and that appellant's portion of the estate had been set aside and received by him.

[2, 3] Appellant's second assignment of error is predicated upon the admission in evidence of the letter dated January 1, 1878, set out above. In Robertson v. Brothers, 139 S. W. 657, Dunklin, Justice, considered this letter and held it to be an archive of the land office and admissible, because more than 30 years old. We approve this holding and think that the same may be said of the copy of the commissioner's report and field notes, the deed from the administrator of the estate to Sterling C. Robertson, and the plot which accompanied the letter, unless appellant had shown that the letter was a forgery. Appellant attacked the genuineness of the letter and testified that he never wrote, authorized, directed, or instructed any one else to write for him any letter to the Commissioner of the General Land Office, consenting that any part of the Robertson headright certificate might be withdrawn from the land office and stating that he had no objection to any disposition the heirs and owners of the certificate desired to make after deducting certain lands in Robertson county apportioned to him as one of the heirs of James R. Robertson. We think this was sufficient to put in issue the verity of the letter, and the question should have been submitted to the jury. Failure of the court to do so is reversible error.

What is here said disposes of the third and fourth assignments of error.

[4, 5] Appellant sought by the deposition of F. G. Prendergast to impeach the genuineness of the signature of P. W. Hall, the county clerk of Robertson county, to the certificate following the exhibits attached to the letter testified to by Chief Clerk Walker of the land office. Prendergast testified that he had known P. W. Hall during his lifetime since 1861; knew his handwriting, having frequently seen him write; that he had made a careful examination of the signature purporting to be that of P. W. Hall found among the papers pertaining to the James R. Robertson headright certificate in the General Land Office; and that in his opinion the signature was not the genuine signature of P. W. Hall. The appellees objected to the testimony because it referred to a document not produced before the court, and upon this objection the evidence was excluded. We think this was error. If the witness had seen the signature in question, it was not necessary for it to be produced in court for the inspection of the judge and jury. We are cited to the case of Renn v. Samos, 33 Tex. 674, as sustaining appellees' objection. This case is not in point. It presented no issue of forgery and merely raised a question of the identity of a will, which it had been alleged was procured by fraud and undue influence. Besides, this opinion was rendered by the "Military Court" of Texas, and is not binding authority. Taylor v. Murphy, 50 Tex. 291; Peck v. City of San Antonio, 51 Tex. 490.

[6] The court refused to admit in evidence two documents bearing the signature of P. W. Hall as county judge of Robertson county for the purpose of being used as standards of comparison on the question of the genuineness of the signature of Hall. The genuineness of these signatures was denied by appellees. The present county clerk of Robertson county had testified by deposition that said documents were regular files in his office and, so far as he knew, had always been treated as genuine and official signatures. The rule is established in this state that a signature cannot be proved by comparison when the signature itself was not before the court. Mugge v. Adams, 76 Tex. 448, 13 S. W. 330.

[7] In our opinion the court did not err in excluding the testimony of the expert witnesses in the land office, who testified by comparing the signature to the papers sent them with that of P. W. Hall then on file in the General Land Office. The testimony of Truett did not establish the genuineness of the signature of Hall to the two papers submitted to the experts in the General Land Office at Austin, and these signatures not being found upon papers filed in the case, and their genuineness being denied by appellees, this testimony was properly excluded. Woodward v. Keck, 97 S. W. 852.

[8] For the purpose of showing that the land alleged to have been allotted to Sterling C. Robertson in Robertson county was absorbed by conflict with the Nixon 11-league grant, the appellant offered in evidence a certified copy from the land office at Austin of that part of the official map of Robertson county which tended to prove this fact. Appellees objected on the ground that it was improper to show conflict without field notes and because the testimony was irrelevant and immaterial. We think the action of the court in sustaining this objection was error. Hollingsworth v. Holshousen, 17 Tex. 51; Railway Co. v. Bowie, 2 Tex. Civ. App. 437, 21 S. W. 304.

The ninth and last assignment challenges

the sufficiency of the evidence to support the verdict. Since the judgment must be reversed and the cause remanded for another trial, this assignment will be disregarded.

Appellant's brief in this case is typewritten and 23 pages in length. This is a violation of rule 37 for Courts of Civil Appeals (142 S. W. xiii) and Vernon's Sayles' Civil Statutes, art. 1614. The writing is double-spaced, however, clearly written, and well prepared, and, on account of the issues involved, we have for this time waived the irregularity and considered it, since appellee does not object, but our action must not be taken as establishing a precedent.

For the errors pointed out, the judgment is reversed, and the cause remanded.