DUNLAP et al. v. SQUIRES. (No. 7504.)

(Court of Civil Appeals of Texas. Dallas. April 29, 1916. On Motion for Rehearing, June 10, 1916.)

1. APPEAL AND ERROR ☞757(1) — BRIEFS — SPECIFICATION OF ERROR.

Where the record shows that certain rulings of the court below were attacked in a motion for new trial, and that such rulings constitute the assignments of error urged in this court, it is unnecessary that appellant's brief should specifically so state.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3092; Dec. Dig. ☞757(1).]

2. HUSBAND AND WIFE ☞264—COMMUNITY PROPERTY—TRANSFER TO HUSBAND—SUFFICIENCY OF EVIDENCE.

Evidence examined, and held insufficient to go to the jury on the question whether certain community property had become the husband's exclusive property prior to a levy thereon by his wife's judgment creditor.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 916; Dec. Dig. ☞264.]

3. PLEDGES ☞34 — CHARACTER OF TRANSACTION—SUFFICIENCY OF EVIDENCE.

Evidence examined, and held insufficient to go to the jury on the question whether certain cotton had been pledged before being levied upon.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 90; Dec. Dig. ☞34.]

4. APPEAL AND ERROR ☞562—STATEMENT OF FACTS—ESSENTIALS.

The statement of facts need not show the value of the property in controversy when the trial court's judgment recites that fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2495–2499; Dec. Dig. ☞562.]

5. HUSBAND AND WIFE ☞268(1)—COMMUNITY PROPERTY—LIABILITY FOR ANTENUPTIAL DEBTS.

Community property is liable for the antenuptial debts of the wife.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 953, 957–960, 964, 967; Dec. Dig. ☞268(1).]

6. APPEAL AND ERROR ☞1175(1)—REVERSAL—FINAL JUDGMENT.

It is the duty of this court, under the statute, to render final judgment upon reversal when the case has been fully developed in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573, 4575, 4576, 4583–4587; Dec. Dig. ☞1175(1).]

On Motion for Rehearing.

7. APPEAL AND ERROR ☞1177(1)—REVERSAL—NECESSITY OF NEW TRIAL.

Reversal held to necessitate another trial, since the record does not conclusively show that the case was fully developed in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604, 4610; Dec. Dig. ☞1177(1).]

Appeal from Rockwall County Court; G. W. Reese, Judge.

Action by Theodore Squires against O. E. Dunlap and F. A. Ferris. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

H. M. Wade, of Rockwall, for appellants. T. B. Ridgell, of Rockwall, for appellee.

TALBOT, J. This was a proceeding, under the statute, for the trial of the right of property to six bales of cotton levied on as the property of Mrs. T. H. Squires, wife of the appellee, by virtue of an execution issued on a judgment obtained by appellants against the said Mrs. Squires prior to her marriage to the appellee. In the tender of issues filed, the appellee, Theo. Squires, as claimant, al-

leged in substance that the debt sought to be collected by the levy of the execution in question was an antenuptial debt of his wife; that the property seized was not her separate property and not subject to said execution; that the cotton levied on was raised upon the premises of claimant and was therefore the community property of himself and his said wife, unless the minor children of his wife had an interest in same, and unless by reason of the facts it was the separate property of claimant; that he had used about $200 of his separate money and property in raising the crop of which the cotton in controversy constituted a part, and that said cotton was held by him at the time it was levied upon to secure said advancement; that said cotton at that time was owned and held by claimant to pay for said separate advancement, and also to pay the Citizens' National Bank of Rockwall for an indebtedness of over $200, which claimant was owing for money used to make said crop of cotton; that said cotton had been delivered to claimant and was being held by him at the time it was levied upon for the purpose of paying, first, the said bank debt, and that if any remained, then to pay said separate advancement. The said appellee and claimant made the further following allegations:

"The plaintiff contends, first, that by reason of the circumstances under which this cotton levied upon was in his possession and control and the purpose for which it was so held by him and so delivered to him, that as a matter of fact and law it was his separate property. If mistaken in the law which he first insists upon and if same should be held to be community property, then he says that same is not liable for the admitted debt of his wife contracted before marriage. The plaintiff further says that the defendants are not entitled to recover for the reason that said property was also held at the time and had been delivered to plaintiff for the purpose of securing and paying the debt of plaintiff and to pay the debt of plaintiff to the bank as aforesaid, which debt at the bank was for money and advances necessary to make said crop, and for which it was understood that said cotton was in the possession of claimant herein pledged to secure the said indebtedness to said bank and all of which facts the defendants knew, or with exercise of diligence would have known, and further by the possession and ownership of plaintiff and by both actual and constructive notice the defendants did know."

By a trial amendment the appellee alleged that he had paid out of his separate estate about $80 to C. P. Dorsey, and $70 to A. L. Atkins, debts contracted by his wife before her marriage to him, under an agreement that he was also to be reimbursed therefor out of the cotton in controversy, and that he was holding said cotton, which had been delivered to him, for that purpose. The appellants, Dunlap and Ferris, alleged, in substance, that the cotton when levied upon was on the premises of appellee's wife, Mrs. Squires; that they agreed with the appellee that the debt for which the judgment involved in the suit was rendered was an antenuptial debt of Mrs. Squires; that said cotton was the community property of the ap-

pellee and the said Mrs. Squires, and as such was liable for the antenuptial debts of Mrs. Squires; that appellants, on October 7, 1912, obtained judgment in the justice court of precinct No. 1 of Rockwall county against the appellee's wife, Mrs. Squires, for the sum of $188.78; that said judgment was unpaid, and that on the 8th day of October, 1914, the execution involved in this suit was issued and levied by the constable of said Rockwall county upon the cotton in controversy; that said cotton has been, as appellants have been informed, sold or disposed of by claimant. Appellants further allege that the facts pleaded by the appellee with reference to the character of his ownership of the cotton in question do not show such ownership in him as entitles him to recover in this action; that appellee is the legal custodian of the community property of himself and wife and lien contracts are prohibited between husband and wife without notice to judgment creditors who have levied an execution upon such property in an effort to collect their debts. The prayer is that appellants have judgment subjecting the property in controversy to the payment of their debt; that if said property should not be forthcoming for that purpose that they have judgment against the appellee and the sureties on his claimant's bond for the amount of said debt, interest and costs of suit. A jury trial resulted in a verdict for the appellee, and the appellants perfected an appeal to this court.

[1] Appellee objects to a consideration of any of appellant's assignments of error. The objection is, in substance, that neither of the assignments is supported by any statement in the brief showing that the ruling of the court assigned as error was embraced in a motion for a new trial filed in the lower court. The objection is not well taken. The record discloses that there was a motion for a new trial made in the court below, and that grounds assigned in that motion constitute the assignments of error urged in this court. Thus it appears that the rulings of the court complained of in this court were embraced in a motion for a new trial in the court below, and it is not absolutely essential to a consideration of the assignments of error that a specific statement to that effect should appear in the brief. Western Indemnity Co. et al. v. Ellen MacKechnie, 185 S. W. 615, recently decided by this court, but not yet officially reported.

[2, 3] The first and second assignments of error complain of the court's refusal to give requested charges, in different forms, directing the jury to return a verdict in favor of appellants. The contention of the appellants is, in effect, that the community property of the husband and wife in this state is subject to the payment of the antenuptial debts of the wife; that on the trial of this case in the court below the value of the property in controversy was shown; that by the admis-

sions of appellee and the undisputed evidence, as such admissions and evidence appear in the record sent to this court, it was shown that the judgment sought to be collected by the execution issued thereon and levied on said property was rendered upon an antenuptial debt of appellee's wife, and that said judgment was unpaid; that said execution had been levied on the property in controversy, and that said property was the community property of appellee and his wife. On the other hand the appellee contends, in substance, that the property in controversy, not being the separate property of Mrs. T. H. Squires, the appellee's wife, and the debt sought to be collected being an antenuptial debt of Mrs. Squires, said property was not subject to the payment thereof; that in no event was appellant entitled to recover, and no other judgment could have been rendered by the lower court than the one rendered, because the evidence, as shown by the statement of facts, failed to disclose the value of the property in controversy, or that appellant had judgment against appellee's wife for any amount, or that an execution had been issued and levied upon the property in controversy to satisfy any amount. If this contention of the appellee was sustained by the record, then it would be clear that no other judgment than that rendered by the court could properly have been rendered, and in that case a verdict should have been directed for appellee. Evidently, the trial court was not of the opinion that the appellants had failed to make proof of the judgment, the execution and its levy upon the property in controversy or the value of said property. The case was submitted to the jury on a charge, in which the court, in effect, assumes that all these facts had been established, and instructing them that if they believed from the evidence that the property in controversy was the separate property of the appellee, who is referred to as the plaintiff, "or the community property of himself and wife, and was not the personal earnings of the said wife, nor the rents and revenues from her separate property," to find for plaintiff. In submitting the converse of the propositions the court told the jury that if they believed from the evidence "that the cotton in controversy was the separate property of Mrs. Theo. Squires, or that it was a part of her personal earnings or that the same was a part of her income rents and revenues from her separate property to find" for appellants, who are designated as "defendants," as against the plaintiff and his bondsmen in appeal for the possession of said cotton or its proven value, etc. It is manifest, therefore, from the charge that the court regarded the existence of the judgment, the issuance and levy of the execution, and the value of the property levied on as facts conclusively established by the evidence. The correctness of these conclusions is verified by the statement of facts and other parts of the record before this court. In his tender of issues the appellee made no denial of the existence of the judgment sought to be collected nor of the issuance and levy of the execution in question on the property in controversy. On the contrary he practically admits in his pleadings the existence of said judgment, the issuance and levy of said execution on said property, and that the debt of appellants which had been merged into said judgment was an antenuptial debt of his wife. He also admits that the cotton levied on was the community property of himself and wife, unless· the minor children of his wife have an interest in the same, or unless by reason of the facts it was and is his separate property. He alleges:

"That the property levied upon by said defendants is not subject to the debt of Mrs. T. H. Squires, which debt was an antenuptial debt of the wife of plaintiff, and said property or cotton not being the separate property of Mrs. T. H. Squires [his wife] is not subject to the execution in this cause, and defendants should take nothing by their suit, and plaintiff should have judgment establishing his right and claim to said cotton."

That he had furnished about $200 of his separate money and property to make the crop of which the cotton in question was· a part, and that at the time said cotton was levied upon it was held by him to secure said advancement. That at said time it was, in fact, owned and held by plaintiff for said advancement, ·and also to·pay the Citizens' National Bank of Rockwall an indebtedness of over $200, which plaintiff was owing for money used to make said cotton and crop. That by reason of the circumstances under which said cotton was in his possession and control and the purposes for which it was so held by him it was his separate property. He further avers that:

"If he is mistaken in the law as first insisted upon, and if said property should be held to be community property of himself and wife, the same is not liable for the *admitted debt of his wife contracted before marriage*." (Italics ours.)

By the trial amendment ·hereinbefore referred to· the appellee made the ·following allegations:

"That plaintiff has paid out of his separate estate about $80 to· C. P. Dorsey, and $70 to A. L. Atkins for his wife, and which were debts of his wife and were made before marriage, and under agreement he was also to be reimbursed and paid out of this cotton, and he was holding same for that purpose, and same was so delivered to him for that purpose."

Appellee testified, as shown by the statement of facts agreed to by the parties and approved by the trial judge, that he was claimant of the cotton levied on in this case, and that same was raised on the farm occupied by himself and family, and that when he married the present Mrs. Theo. Squires she and her children owned the said farm where said cotton was raised; that during the year 1913 he paid some $200 of the antenuptial debts of his wife to C. P. Dorsey, the

Fair Dry Goods Store, and others; that the Citizens' National Bank loaned him $200 during the year 1914, which money was used to make the crop and cotton levied on in this case; that he owed this money at the time levy was made and told the agent of defendants at the time of levy that this was the case; that he was holding said cotton to pay said indebtedness at the bank and that he had left the tickets at the bank, but no mortgage of any character had been executed by plaintiff on said cotton; that there was about 10 bales of cotton on the farm when levy was made on the 6 bales; that he cultivated and raised on said farm each of the years 1913 and 1914 about 23 bales of cotton and sold same and would have paid this indebtedness of his wife if he had had the money; that this debt was a note owed by his wife prior to his marriage with her; that his wife had turned over all of said cotton to him to pay the money borrowed by plaintiff to make the crop with or any other indebtedness which might be due; that "he filed a claimant's oath and bond and took said cotton out of the hands of the officer levying said writ and took the cotton and sold same and used the money to pay off the note owed by me to the Citizens' National Bank." Upon being recalled he further testified that he had owned the interest of his wife and Charley Crawford in the farm upon which the property in controversy was raised since September, 1912. This is all of the testimony offered by the appellee in support of his alleged claim and right to the property in controversy and is insufficient, especially in view of the other facts of the case, to establish his claim, even if his allegations were sufficient, which may be gravely doubted, to authorize the maintenance of our statutory action of the trial of the right of property. The testimony is sufficient to show that appellee paid out of his separate funds antenuptial debts of his wife during the year 1913 amounting to about $200, but it does not show that before the levy of the appellants' execution the cotton seized had been separated from the other cotton raised on the farm for the year 1914 and actually appropriated to reimburse himself for such expenditure, or that he was even holding said cotton at the time of the levy of the execution for the purpose of reimbursing himself for the money paid out on his wife's antenuptial debts. It does show that he did not so appropriate the cotton, but that he sold it and used the money derived from such sale to the payment of a note owed by him to the "Citizens' National Bank." It shows that the "Citizens' National Bank" loaned appellee $200 during the year 1914, which was used to make the "crop and cotton levied on," but is insufficient to show that the cotton levied on had been pledged to that bank to secure the payment of such indebtedness, and that appellee was holding it as such for the bank. Appellee testified that he was holding the cotton to pay the debt he owed the bank, and that he had left the "tickets" at the bank, and that he had, as before stated, sold the cotton and paid the bank's debt, but the character of the tickets and the purpose and effect of leaving them with the bank was not shown. He further testified, however, in this connection, that no mortgage of any character had been executed by him on the cotton. The money borrowed by appellee from the bank became the community property of himself and wife, and the debt contracted thereby was a community debt, and so far as the record before us shows, the bank had no greater claim on the cotton in controversy for the payment of this debt than any other creditor of appellee.

[4] The statement of facts recites that the appellants introduced in evidence the judgment recovered by them against Mrs. Squires before her marriage with the appellee, the execution issued thereon and levied on the cotton in controversy, the officer's return indorsed on said execution, and that the cotton was of the value of 5½ to 6 cents per pound, but neither the amount of said judgment nor the amount for which the execution was issued, nor the officer's estimated value of the cotton, nor its weight is shown. There was, however, as before stated, no issue made by the pleadings as to these matters, and the case was submitted to the jury by a charge of the court which, in effect, assumes that all those facts were conclusively established by the evidence and the admissions of the appellee in his tender of issues. Neither the weight of the cotton levied upon nor its estimated value by the officer making the levy is admitted by appellee in his pleadings, but the judgment of the court recites that it was valued at $179.40. This recital in the judgment shows a finding of the court that the value of the cotton in controversy was the amount stated, and there is nothing in the record that impeaches this finding. The evidence of such a fact, like others, should and ordinarily does appear on appeal in the statement of facts, but such method is not the only way that the appellate court may be informed of its establishment on the trial in the lower court. It may be shown, as we understand, either by the statement of facts, or by a recital thereof in the judgment, or in a bill of exceptions. The precise question we have here has not been decided by any appellate court of this state so far as we know, but we cite the following cases, which very clearly indicate that our conclusion is correct: Salinas v. Wright, 11 Tex. 572; De Garcia v. San Antonio & A. P. Ry. Co., 77 S. W. 275; Glasscock v. Price, 45 S. W. 415; Parlin & Orendorff Co. v. Cantrell, 40 S. W. 415. In the first case cited the Supreme Court said:

"To authorize the revision of a judgment, on the merits, a formal statement of facts is not essential, where all the evidence legally and conclusively appears by the record."

And in that case it was held that it may so appear by a bill of exceptions. In the other cases cited the facts considered as having been established were recited in the trial court's judgment.

[5] That the cotton levied on was the community property of appellee and his wife was conclusively shown, and that such property is liable to execution for the debts of the wife contracted before marriage is settled law in this state. Taylor v. Murphy, 50 Tex. 291. Looking, therefore, to the statement of facts, the admissions of the appellee, as they appear in his pleadings, and to the recitals in the trial court's judgment, it appears, we believe, that every fact essential under the law to the right of appellants to recover in this case was conclusively established, and that judgment should have been rendered in their favor. In no event under the law and the undisputed facts was appellee entitled to judgment. The trial court therefore erred in submitting the case to the jury.

Appellants complain of several paragraphs of the court's charge, but if we are correct in the views expressed it becomes unnecessary to a proper disposition of the appeal to consider the assignments of error attacking those charges. We shall take occasion, however, to say that, in our opinion, the most of the paragraphs assailed were not only unnecessary for the guidance of the jury, but were calculated to confuse and mislead them.

[6] The case appears to have been fully developed, and it becomes our duty, under the statute, to render such judgment in this court as should have been rendered in the court below. It is therefore ordered that the judgment of the county court be reversed, and that judgment be here rendered for appellants against the appellee and the sureties on his claimant's bond for the value of the cotton levied upon, namely, $179.40, together with legal interest and all costs.

Reversed and rendered.

## On Motion for Rehearing.

The appellee insists that since there was a statement of facts in the record sent to this court which did not contain any evidence of the value of the cotton in controversy, we erred in holding that the recital in the judgment of the value of the cotton established that fact. There is force in this insistence, and upon further consideration of the question we conclude that possibly we were mistaken in that conclusion.

[7] It is further contended, in effect, that we were in error in holding that it appeared that the case had been fully developed and in rendering judgment, for that reason, in favor of the appellants. A further careful review of the record upon appellee's motion for a rehearing has led us to the conclusion that this contention should be sustained.

This court has heretofore held that where it does not conclusively appear that the case was fully developed in the trial court, the appellate court, instead of rendering judgment, must remand the cause for another trial. Allen v. Anderson & Anderson, 96 S. W. 54. A re-examination of the statement of facts and record convinces us that it does not so appear in this case. The judgment of this court rendering judgment in favor of appellants will therefore be set aside, and the judgment of the county court will be reversed, and the cause remanded.

Reversed and remanded.